[No. 11392. Department Two. June 23, 1914.]

CLARA WENDT, *Respondent*, v. INDUSTRIAL INSURANCE
COMMISSION OF WASHINGTON, *Appellant*.[1]

MASTER AND SERVANT—WORKMEN'S COMPENSATION—EXTRA HAZ-
ARDOUS EMPLOYMENTS—STATUTES—CONSTRUCTION. A corporation is
engaged in an extra hazardous employment, within the purview of
the industrial insurance act, 3 Rem. & Bal. Code, § 6604-1 *et seq.*,
where, in connection with its main business of conducting a large
department store, it maintains a work shop for repairs where power-
driven machinery is employed and manual labor exercised, over
which place it has control, in view of Id., § 6604-2, enumerating,
among the hazards embraced, workshops where machinery is used,
and § 6604-3, defining workshops as rooms or places wherein power-
driven machinery is employed and manual labor exercised . . .
in or incidental to making, repairing, or adapting any article, over
which place the employer has the right of access or control.

SAME—EXTRA HAZARDOUS EMPLOYMENTS—CARPENTERS—STATUTES
—CONSTRUCTION. A carpenter employed by a large department store
in making repairs, alterations and fittings and doing carpenter
work about the store, who was killed while attempting to turn on
the electric power in the workshop where power-driven machinery
was employed, is a "workman" within the protection of the indus-
trial insurance act, where his employer was, in one of its depart-
ments, through the operation and control of a workshop employing
power-driven machinery, engaged in an extra hazardous employ-
ment within the definition of 3 Rem. & Bal. Code, §§ 6604-2 and

[1]Reported in 141 Pac. 311.

6604-3; in view of Id., § 6604-4, including in the particular classes of industry covered by the act, class 5, under construction work, "carpenter work not otherwise specified," and class 29, under factories using power-driven machinery "working in wood not otherwise specified;" and in view of the further provision that, if an employer, besides employing workmen in extra hazardous employments, shall also employ workmen in other employments, the act shall apply only to the extra hazardous departments and employments of workmen employed therein.

SAME—WORKMEN'S COMPENSATION—PERSONS PROTECTED—SCOPE OF EMPLOYMENT. A carpenter employed in a department store having a repair shop where power-driven machinery is employed, is acting within the scope of his employment, and so is within the purview of the industrial insurance law, where he was killed while turning on the electric switch to start a grindstone for the purpose of sharpening a chisel for use in his work.

STATUTES—CONSTRUCTION—DEPARTMENTAL CONSTRUCTION. The departmental interpretation of the industrial insurance commission law, under advice of the attorney general, while entitled to weight, is not binding on the courts where the law was not uncertain or obscure.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered May 9, 1913, upon findings in favor of the plaintiff, overruling the industrial insurance commission in denying compensation to a widow, upon an agreed statement of facts. Affirmed.

*The Attorney General* and *S. H. Kelleran, Assistant*, for appellant.

*J. W. Quick* and *Norwood W. Brockett*, for respondent.

MORRIS, J.—Respondent appealed to the lower court from a decision of the industrial insurance commission that she was not entitled to compensation upon the accidental death of her husband, the decision being based upon the ground that the deceased was not engaged in hazardous employment, within the meaning of the law, at the time of receiving the injury causing his death. The lower court overruled the finding of the commission, and directed that the claim be allowed, from which decree the commission has appealed.

The case was submitted below and here on an agreed statement of facts, from which it appears that, at the time of his death, George Wendt was a carpenter, employed by the Stone-Fisher Company, of Tacoma; that the Stone-Fisher Company is a corporation owning and operating a large department store, engaged in the general buying and selling of merchandise of various kinds, occupying nine floors, employing one hundred and seventy persons, and having three delivery wagons and three delivery automobiles; that, diagonally across the alley from the store, the company maintains a repair shop, operated primarily for the repair of its delivery wagons and automobiles; that, in this repair shop, is a carpenter's bench, carpenter's tools, and a power lathe, emery wheel, grindstone, drills, etc., which are operated by electric current by a two-horse power electric motor, the current being furnished by the city of Tacoma over a low tension wire carrying 220 volts. This current is turned on and off by an ordinary strap switch with copper contacts and rubber handles, the switch being placed upon the wall from five to six feet above the floor. Attached to the rubber handles is also a string, which may be taken hold of and used for the purpose of pulling the handle down for the purpose of turning on the current. Employed in this machine shop, is a machinist electrician, who repairs the delivery automobiles used in connection with the store and has charge of operating the power-driven machinery in the shop.

The company employs ordinarily one, but sometimes two or three, carpenters for the purpose of making shelving, standards for display purposes, and necessary repairs, additions, and alterations in the fittings of the store, and the doing of odd carpenter jobs about the store. The deceased had been employed by the company as head carpenter prior to March 20, 1912, the day upon which he met his death, and in such employment had performed the ordinary carpentry work needed by the company in and about the store. On the day of the accident, Wendt attempted to turn on the electric

current by means of the switch, for the purpose of putting in motion a grindstone on which he was going to sharpen a chisel. In taking hold of the handle of the switch, his fingers came in contact with the copper fittings or contacts, and he was instantly killed by the electric current, caused by the secondary wire of the city of Tacoma, which carried the current into the repair shop, becoming crossed with a high tension wire of a power company, which carried a high voltage and which caused about 2,700 volts to pass through his body. Wendt had nothing to do with the maintenance or repair or operation of the electric or power machinery of the shop, or with the maintenance or the repair of the delivery wagons or automobiles. He left surviving him the plaintiff, his widow, who was residing with him at the time of his death, and who was dependent upon him for support. Upon the decease of George Wendt, his widow made her application to the industrial insurance commission, fully complying with all the requirements of the law relating to necessary proof, and her claim was rejected by the commission upon the grounds previously stated.

The act to be interpreted is chapter 74, Laws 1911, p. 345 (3 Rem. & Bal. Code, § 6604-1 *et seq.*). Section 1 of this act, in announcing the policy of the state in its treatment of working men injured in hazardous undertakings, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief is provided for workmen injured in extra hazardous work, and their families and dependents, regardless of questions of fault, and to the exclusion of every other remedy. Section 2 (Id., § 6604-2) in enumerating the hazards intended to be embraced within the term "extra hazardous" as used in the act, names "factories, mills and workshops where machinery is used," and ends with this general description of included occupations: "If there be or arise any extra hazardous occupation or work other than those hereinabove enumerated, it shall come under this act." Section 3 (Id., § 6604-3) defines workshop as follows:

"Workshop means any plant, yard, premises, room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise in or incidental to the process of making, altering, repairing, printing or ornamenting, finishing or adapting for sale or otherwise any article or part of article, machine or thing, over which premises, room or place the employer of the person working therein has the right of access or control." In the same section, workman is defined as every person in this state who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries scheduled in the act. Section 4 (Id., § 6604-4) in referring to the particular classes of industry covered by the act, includes in class 5 of the construction work, "carpenter work not otherwise specified;" in class 29, under the heading "Factories (using power-driven machinery)" "working in wood not otherwise specified;" in class 34, under the same heading, "machine shops not otherwise specified." The same section provides that, if an employer besides employing workmen in extra hazardous employment shall also employ workmen in employments not extra hazardous, the provisions of the act shall apply only to the extra hazardous departments and employments and the workmen employed therein.

It being shown that the deceased, at the time of his injury, was employed in a "workshop where machinery is used;" that the workshop was a place "wherein power-driven machinery is employed and manual labor is exercised . . . over which place the employer of the person working therein has the right of access or control," and that he was injured "upon the premises," it seems to us there is no escape from the conclusion that his injury is within the purview of the act.

The commission makes, as its strongest contention, the claim that it is necessary to show that the employer was engaged in some extra hazardous work or employment within the meaning of the act, either in respect to his whole business or in some department thereof, in order that an injured em-

ployee shall become entitled to the protection of the act, and that it is not enough to show that the injured employee himself was engaged in some extra hazardous work without regard to the nature of the employer's business, assuming, for the purpose of this contention, that the Stone-Fisher Company was not engaged in an extra hazardous business. It may be admitted that, in its main business of conducting a large department store, the Stone-Fisher Company was not engaged in an extra hazardous industry, but, in connection with and as a part of this business, it maintains a workshop where machinery is used, power-driven machinery is employed, and manual labor is exercised, over which place it has the right of access or control, which place is expressly included within the enumeration of extra hazardous work in § 2 and within the definition of § 3. Not only, then, do we find an express inclusion of the place where the deceased was injured, but the further language of § 2, "if there be or arise any extra hazardous occupation or work other than those hereinabove enumerated, it shall come under this act," is an expression of the legislative intent to bring under the provisions of the act every character of work which from its nature should be found to be extra hazardous. In addition, the employment in which Wendt met his death would fall within the three classes quoted from § 4, "carpenter work not otherwise specified," "working in wood not otherwise specified," and "machine shops not otherwise specified." Again, the act recognizes in § 4 that the same employer may at the same time be engaged in employments both within and without the purview of the act, so far as the hazardous character of the employment is concerned; in which case the act shall apply only to the extra hazardous departments and to the workmen employed therein. So, however we answer the contention of the commission, whether it is necessary for the employer to engage in some extra hazardous work either in respect to his whole business or some department thereof, in order that an injured employee shall be entitled to protection,

or whether it is only necessary to show that the injured employee himself was engaged in some extra hazardous work, the result upon the submitted facts must be the same.   The business of the Stone-Fisher Company was, within the meaning of this act, extra hazardous in the maintenance of the workshop where power-driven machinery and men were employed, and the deceased himself was, at the time he met his death, engaged in an extra hazardous employment as defined by the act.   If we could so construe the act that the extra hazardous character of the employer's business was to be determined by the business he was principally engaged in, we might accept the finding of the commission; but the act, as we have seen, recognizes the fact that the same employer may conduct different departments of business, some of which fall within the act, some of which do not.   And in this connection it matters not which is the principal business and which is the incidental business.   If the employer conducts any department of his business, whether large or small, as an extra hazardous business within the meaning and defined terms of this act, his workmen would come within the class designated by the act, and be entitled to the protection of the act.   Such interpretation, we believe, falls within the letter as well as the spirit of an act that, because of its humaneness and declaration of a new public policy, should be interpreted liberally and broadly, in harmony with its purpose to protect injured workmen and their dependents independent of any question of fault.

The commission raises some question as to whether Wendt at the time of his injury was acting within the scope of his employment.   We think that, in attempting to turn on the electric current for the purpose of putting in motion a grindstone on which he intended to sharpen his chisel, he was clearly acting within the scope of his employment as carpenter, irrespective of the stipulated fact that he had nothing to do with the maintenance or operation of the power-driven machinery in the shop.   Giving full force to that stipulation,

we do not believe that it excludes, either in law or in fact, the act Wendt was engaged in when he received his injury. A carpenter is certainly acting within the scope of his employment when he is sharpening, or preparing to sharpen, his tools; and we may recognize the fact that a chisel is a common tool for a carpenter and requires frequent sharpening.

The last contention of the commission is that the interpretation of the act by the commission under advice from the attorney general ought to be given weight in the event that the act is of doubtful construction. It has long been the law that, where an act is uncertain or obscure, the interpretation of that governmental department having to do with its administration and enforcement is entitled to great weight. Giving full force to such a rule and recognizing it as we have in our previous decisions, it does not seem to us that, in answering the question submitted by this appeal, we find the act so uncertain or obscure as to make it proper or necessary to seek administrative interpretation in ascertaining its meaning.

The judgment of the lower court is affirmed.

Crow, C. J., Parker, and Fullerton, JJ., concur.