[No. 28362. Department Two. November 4, 1941.]

MILTON H. BERRY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

[1]Reported in 118 P. (2d) 785.

W. H. *Cook* and *Kenneth Durham*, for appellant.

*The Attorney General, T. H. Little* and *Edward S. Franklin, Assistants,* for respondents.

BEALS, J.—Since 1930, Vern R. Faires has operated a three hundred sixty acre wheat farm near the city of Colfax, in Whitman county. Since 1934, he has also done a considerable amount of compensated hauling by motor truck. Up to 1937, his hauling operations were performed under a common carrier's permit, but this permit was not renewed for the years 1938 and 1939.

Milton H. Berry, the appellant herein, was employed by Mr. Faires as a truck driver's helper, and August 7, 1939, while working in connection with the trucking operations, Mr. Berry sustained an injury to his right eye, which later necessitated its removal. He filed a claim for relief under the workmen's compensation act, which claim was rejected by the supervisor, upon the ground that Berry's employment was strictly agricultural in its nature, and was therefore without the protection of the act. The joint board having sustained the supervisor's action, Berry appealed to the superior court, where the action was tried, with the result that, after a trial to the court sitting without a jury, findings of fact and conclusions of law were entered in favor

of the department, followed by a judgment dismissing the proceeding, from which judgment Mr. Berry has appealed to this court.

Error is assigned upon the entry of two conclusions of law; upon the refusal of the trial court to enter judgment remanding the matter to the department, with instructions to allow appellant's claim; upon the entry of judgment dismissing appellant's appeal from the department; and upon the entry of the order denying appellant's motion for a new trial.

The assignments of error present one question only: Was appellant, at the time of his injury, employed by one engaged in an occupation not subject to the operation of the workmen's compensation act, having particular reference to Rem. Rev. Stat. (Sup.), § 7674 [P. C. § 3469], classifying certain occupations as extrahazardous?

It is not disputed that, from 1934 to 1937, both years inclusive, Mr. Faires was operating his truck for hire. It is, however, contended that, during the years 1938 and 1939, he was not engaged in the business of trucking for hire, but confined his trucking operations to an exchange of work with neighboring farmers. As to the year 1939, with which we are here concerned, the record does not support this contention. During the 1939 season, Mr. Faires hauled approximately ten thousand sacks of wheat for five farmers, charging the rates fixed by the department of public service. Concerning this work, Mr. Faires testified:

"Q. 1938 and 1939 you didn't renew your permit? A. I quit hauling for hire because I had as much as I could handle at home. Q. But you did haul in exchange? A. Yes, I did those two years; I exchanged work. Q. What do you mean by you exchanged work? A. Well, if a farmer has maybe a combine and another farmer has a truck, why he can haul that wheat for that man with the combine and then for

that work the other man will harvest for him in exchange. Q. And was that actually done? A. Well, it wasn't gone through with this time. Q. That didn't go through then according to arrangement? A. No, because our wheat—we would have lost the crop this year because he couldn't do it in time, the conditions were that way. Q. Did any of them do any work on your farm then in pursuance to that arrangement? A. No, they haven't done anything to date. Q. But they have paid you this cash for your hauling work. A. We're pretty well settled up. Q. Prior years, 1934, 35, 36, they paid you on a 5¢ rate? A. Well, it depends on the distance; sometimes I got 5¢ and sometimes I got 3¢, but nothing under 3¢. Q. Well Mr. Faires, were you not then during the 1939 season pursuing the same procedure as in prior years? A. Well, it was except not so extensive. It wasn't a business; it was just to fill in my time. Q. But you did expect them to pay you the same rate? A. Well I would have to have the same rate, regardless of the haul."

Mr. Faires stated that he had agreed with Warren Willson to haul the latter's wheat in exchange for Mr. Willson's service in harvesting the wheat on Mr. Faires' farm. As the wheat on the two farms ripened at the same time, Mr. Willson was unable to harvest Mr. Faires' wheat, and paid Mr. Faires for the hauling, partly in cash, partly by delivery of seed wheat, and partly by agreeing to do some threshing for Mr. Faires during the 1940 season. Vern Faires hired his brother to attend to the harvesting, meanwhile continuing to operate his truck. Mr. Faires testified that he hauled wheat for John and Paul Kunze, for which he was paid in cash. He hauled a small amount of wheat for Bill Willson, who in turn hauled the same amount of wheat for Warren Willson, for which Faires received credit. He hauled three hundred sacks of wheat for G. W. Ruff, thereby discharging a small

amount which he owed Ruff, the latter paying the balance in cash.

It must be held that Mr. Faires, during the 1939 harvest season, was engaged in trucking for hire. Had Mr. Faires been exchanging his hauling service for work on his farm, a different question might have been presented, upon which we express no opinion.

Appellant was employed by Mr. Faires as the latter's helper during every harvest season from 1934 to 1939, inclusive, except during the season of 1937. In 1939, appellant reported for work about July 28th, and continued in Mr. Faires' employ as truck helper until August 14th, when he was unable to work longer on account of the injury to his eye. He loaded the sacks of grain upon the truck, and unloaded them at the warehouse, Mr. Faires doing the driving. During the 1939 season he worked steadily as helper on the truck, performing no other work whatever in connection with his employment. Appellant's employment ceased because of his injury prior to the time Mr. Faires hauled his own grain, as he customarily did.

On this appeal no question is presented concerning the cause or nature of appellant's injury. The department resisted appellant's claim upon the ground that his employer, Mr. Faires, was not subject to the act. Only questions of law pertinent to the rejection of the claim for the reason assigned, are presented on this appeal.

The following portions of the workmen's compensation act are pertinent to this inquiry:

"Employer means any person . . . engaged in this state in any extra-hazardous work. . . .

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act. . . . " Rem. Rev. Stat. (Sup.), § 7675 [P. C. § 3470].

Prior to 1937, and at all times since, the statute included "transfer, drayage and hauling," among the enumerated extrahazardous occupations, Rem. Rev. Stat., § 7674. By Laws of 1937, chapter 211, § 1, § 7674 was amended to include "teaming, truck driving and motor delivery, including drivers and helpers, in connection with any occupation except agriculture." The section was amended by chapter 41, Laws of 1939, all of the language above quoted being unchanged, and now appears as Rem. Rev. Stat. (Sup.), § 7674 [P. C. § 3469].

Respondent argues that Mr. Faires' trucking was in connection with agriculture, and that, under the statute last above quoted, such trucking was not an extrahazardous occupation, and was therefore without the protection of the act. *Johnson v. Department of Labor & Industries*, 182 Wash. 351, 47 P. (2d) 6. On the other hand, appellant contends that, in using his truck for hauling grain for compensation as he did, that phase of Mr. Faires' activities constituted an occupation entirely separate and distinct from the management of his farm; that the transfer business was nowise connected with agriculture, within the meaning of the statute; that Mr. Faires was engaged in an extrahazardous occupation under the statute; and that appellant, as an employee, is entitled to the protection of the act.

It is, of course, true that, unless Mr. Faires was engaged in one of the enumerated extrahazardous occupations, or in an occupation classified by the department as extrahazardous, he was not within the compulsory operation of the act, and appellant, as his employee, would be entitled to no benefit thereunder. *Parker v. Pantages Theater Co.*, 143 Wash. 176, 254 Pac. 1083.

An employer may, at one and the same time,

be engaged in two distinct employments, one of which is extrahazardous and within the scope of the statute, while the other is not. To the extent that one of the employer's activities is extrahazardous, he is an employer within the purview of the act, and subject thereto. The test to be applied to Mr. Faires' trucking operations, in order to determine their character for the purposes of this case, is not whether such activities constituted his principal occupation, but rather whether his trucking business was carried on in connection with his agricultural occupation in the conduct of his farm, or as a separate and distinct occupation. *Wendt v. Industrial Insurance Commission,* 80 Wash. 111, 141 Pac. 311; *State v. Business Property Security Co.,* 87 Wash. 627, 152 Pac. 334; *Denny v. Department of Labor & Industries,* 172 Wash. 631, 21 P. (2d) 275; *Lunday v. Department of Labor & Industries,* 200 Wash. 620, 94 P. (2d) 744.

This requires consideration of the statute, in order to determine the legislative intent in using the words "in connection with any occupation except agriculture," or, stated in negative form, not connected with agriculture. In one sense, the hauling of grain to market constitutes trucking in connection with agriculture, whether the grower hauls his own grain or has it hauled by his neighbor as an accommodation or an exchange of services, or pays a commercial trucker to do the hauling. Some relation to agriculture is established by the character of the goods being transported. It does not, however, seem reasonable that the legislature intended to exclude from the scope of the act all commercial hauling from farm to market. One conducting a commercial transfer business would appear to be functioning within the act, whether he hauled a load of furniture from a farm to town, or hauled a load of grain, or a load consisting partly of

furniture and partly of farm produce. In such a case, one engaged in the business of hauling for hire simply transports a commodity from one point to another, having had nothing whatever to do with the articles before delivery to him, and being nowise interested therein after he has transported the same.

It seems reasonable to suppose that the legislature, in amending the act in 1937, had in mind the decision of this court in the case of *Edwards v. Department of Labor & Industries*, 146 Wash. 266, 262 Pac. 973, in which we considered the prior legislative classification as extrahazardous of "transfer, drayage and hauling," and decided that the occupation intended to be covered thereby was that of commercial hauling for hire, and not the hauling by an employer of his own goods, in his own truck. In the cited case, it was held that a merchant delivering his merchandise by his own truck was not engaged in the operation of transfer, drayage, and hauling, and was not engaged in an enumerated extrahazardous occupation. In the course of the opinion, we said:

"Had the legislature classified the driving of ordinary business delivery wagons or trucks, or transferring or hauling in the business of any merchandising concern, whether such business was extrahazardous or not, respondent would have come under the act."

The 1937 amendment above quoted (with the agricultural exception noted) brought within the act employers excluded therefrom by the decision in the *Edwards* case. We have uniformly followed the rule that the statute should be liberally construed, and that any ambiguity or doubtful question should be so resolved as to further the purposes of the act. *Lindquist v. Department of Labor & Industries*, 184 Wash. 194, 50 P. (2d) 46.

It is not reasonable to seize upon the doubtful implication of the 1937 amendment to ascribe to the legislature the intent to exclude from the coverage of the act an activity which had previously been within the scope thereof, such as the hauling by a commercial transfer concern of grain or other produce from farm to market.

The phrase "in connection with" manifestly has reference to some other occupation of the hauler to which the trucking operations are related, and should not be construed as referring to the nature of the goods being transported. A farmer who by his own motor truck hauls his produce to market is engaged in "motor delivery" in connection with agriculture, and is not subject to the act, while the grocer who purchases the farmer's produce, sells it at retail, and by motor truck delivers it to his customers is engaged in motor delivery, in connection with an occupation other than agriculture, and in so far as such motor delivery is concerned, is within the purview of the act.

The record shows beyond question that, for six successive years, including and prior to 1939, Mr. Faires devoted practically the entire wheat harvest season to the business of hauling wheat for hire. In 1939, his trucking activities engaged his entire attention, from daylight until dark, almost every working day, from July 28th to August 22nd. On a few occasions, Mr. Faires hired a driver to take his place, and the hauling continued without interruption. The devotion of his attention to this operation necessitated his hiring labor to harvest his own crop. The hauling which he did for his neighbors had nothing to do with the growing, harvesting, or marketing of the wheat raised on his own farm. While he was a farmer and an agriculturist, the business of trucking and hauling which he conducted was independent of, and entirely dissociated

from, his own agricultural activities, and nowise incidental thereto or connected therewith. It is not enough that one engaged in the business of trucking or hauling for hire should also own and operate a farm. To avoid being within the scope of the act, the trucking or hauling must bear some relation to, or be in some way connected with, the operation of the farm or the disposal of its produce.

Mr. Faires is an employer under the act, brought within the scope thereof by the enumeration of "transfer, drayage and hauling," in § 7674, *supra*, and not by the classification above quoted, referring to teaming, truck driving, etc., in connection with any other occupation except agriculture. The classification "transfer, drayage and hauling" was introduced into the act by the 1927 amendment (Laws of 1927, chapter 310), and has been retained as a classification ever since.

Respondent argues that the term agriculture includes the hauling of farm products to market. Whether or not this is true, is immaterial. The statute does not directly exclude the occupation of agriculture as such. Agriculture remains without the scope of the act, because it is not included therein by any specific designation. The occupation of transfer, drayage, and hauling for hire is expressly included. It may be said that agriculture is within the purview of the act, in so far as its products are concerned with the operations of transfer, drayage, or hauling for hire. In one instance, agriculture is without the act by express exception, while those engaged in teaming, truck driving, etc., in connection with any occupation other than agriculture, are expressly included within its scope.

Respondent cites the case of *Barney v. Anderson*, 116 Wash. 352, 199 Pac. 452, in which it was held that

one injured on a farm during the operation of a hay baling machine was not within the protection of the act. It was simply held, following the cases of *Guerrieri v. Industrial Insurance Commission*, 84 Wash. 266, 146 Pac. 608, and *Remsnider v. Union Sav. & Trust Co.*, 89 Wash. 87, 154 Pac. 135, that the hay baling machine did not constitute a workshop, as that term was used in the act, and that the occupation was not otherwise classed as extrahazardous.

In the case of *Johnson v. Department of Labor & Industries*, 182 Wash. 351, 47 P. (2d) 6, upon which respondent also relies, it was held that a farmer who, in clearing his land, cut a few trees into pulp wood lengths, did so as an incident to his occupation of farming, and that that occupation as such had not been classified by the act as extrahazardous. The cases cited are not in point here.

The judgment appealed from is reversed, with directions to the superior court to reverse the order of the department from which appellant appealed, and remand the cause to the department for further proceedings in accordance with the views herein expressed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.