[No. 29589. *En Banc.* October 4, 1945.]

JOHN W. DEHAAS, *Appellant,* v. CASCADE FROZEN
FOODS, INC., *Respondent.*[1]

[1]Reported in 162 P. (2d) 284.

*J. D. Searle* and *J. P. Tonkoff,* for appellant.

*Nat U. Brown,* for respondent.

SIMPSON, J.—The plaintiff brought this action to recover compensation for personal injuries sustained while working for defendant on a machine operated in the process of cleaning beans.

In his amended complaint, plaintiff alleges that he was employed in extrahazardous employment for defendant during the month of September, 1942, in that he was operating power-driven machinery in the cleaning of beans, which was situated in a factory, mill, or workshop where the machinery was used, as defined in the workmen's compensation act of the state of Washington; that defendant failed to furnish to the department of labor and industries any report of its operations on which plaintiff was employed as provided by law. It was further alleged that, while so employed and as a proximate result of the negligence of defendant, plaintiff was injured.

The charges of negligence were: In failing to furnish a safe place to work and in failure to equip the bean-cleaning machine with suitable guards and safety devices.

Defendant, in its answer, admitted that plaintiff was employed by it but denied all of the remaining allegations of the complaint. Defendant then presented four affirmative defenses to plaintiff's cause of action. The first defense was that defendant was engaged in an agricultural operation; that plaintiff had filed a claim with the supervisor of industrial insurance of the state of Washington and, in his claim, alleged that he was engaged in an extrahazardous occupation as defined by the workmen's compensation act of the state of Washington; that April 26, 1943, the super-

visor rejected the claim for the reason that at the time of injury the workman was not engaged in any work within the jurisdiction of the division of industrial insurance; further, that plaintiff appealed to the joint board, and that thereafter, at plaintiff's request, the appeal was dismissed, and that the decision of the department was *res judicata* upon the questions presented by plaintiff's complaint.

The second affirmative answer claimed that plaintiff's election to recover from the workmen's compensation fund barred him from bringing an action against defendant.

The third affirmative answer alleged that plaintiff's injuries and damages, if any, were caused by his "carelessness, negligence, and contributory negligence."

The fourth defense claimed that the damage to plaintiff, if any, was due to the risk inherent in and incidental to the work and was assumed by plaintiff. ·

The reply put in issue the allegations contained in the affirmative defenses. The case came on for trial. A jury was impaneled, and evidence was produced on behalf of plaintiff. At the end of plaintiff's case, a motion for a judgment of nonsuit and dismissal of the complaint was presented by defendant. Thereafter, an order and judgment were duly made and entered by the trial court, granting the motion for nonsuit and dismissing the action. Plaintiff appealed.

The assignment of error is in granting defendant's motion for dismissal at the close of plaintiff's case.

The facts in so far as we are able to collect them from the statement of facts may be summarized as follows: Plaintiff was injured September 29, 1942, at a time when he was in charge of the operation of a machine used to clean beans. The machine was placed upon a stationary platform thirty feet wide and sixty feet long, the top of which was about four feet above the ground. The machine was five feet wide, seven feet in length, and five feet in height. Appellant was injured when he attempted to clean the machine by pouring water into it at the close of the day's work.

It is impossible to ascertain how the machine was constructed, because of the manner in which its construction

and operation were attempted to be described to the court and jury. To illustrate, we quote from appellant's testimony:

"A. It was operated by a big power machine, and that was a 45-horsepower motor. Q. Electric motor? A. Gas motor. Q. Can you give the jury some idea of how it worked as it cleaned these peas? A. Well, this here recleaner is just —I suppose they know about what a separator is, that is, a wheat separator to reclean wheat—it's on practically the same thing. There was a big fan in here (illustrating), and I poured the peas in here, and there was a little place in here that I had to clean across there, and this big fan I got caught in was sitting over in there—I should judge it might have been up that high maybe (illustrating), I don't know. Then there was another place over back here I had to clean out; then several or two or three places in on the other side that I had to go in there with sticks to poke the derbies (debris) loose, and, while I was getting that machine ready to clean for the evening, I was pouring water in here (illustrating); I think there was three different places I had to pour water in here to soak that stuff loose so it could be cleaned for the next morning, and, while I was doing that, I slipped and fell. Q. What position were you in when you were cleaning that? A. Well, just standing in—oh, kind of a brace like that, had my foot down here on kind of a frameworks on the outside, and my other foot kind of over here on top."

Later, during the examination of appellant, his counsel induced him to draw a sketch of the platform and the bean-cleaning machine. However, the sketch is of no great value to this court in ascertaining the position of the fans operating within the machine, nor the manner in which they were operated, nor the position in which appellant placed himself while cleaning the machine. The sketch is without any value whatever in showing the places into which the water had to be poured in order to clean the machine. It seems that one fan was placed in the lower part and the other in the top portion of the machine. The lower fan was covered, but the top of the upper one was exposed.

Appellant, in attempting to clean the machine, placed one foot on some kind of brace and the other on the top of the hopper into which the beans were poured, the top of

the hopper being on a level with the top of the exposed fan. The places on which appellant stood were wet and slippery and known to be so by him at the time he attempted to clean the machine at the end of the day's work. From the place and position indicated by appellant, he attempted to pour water into the machine and, in so doing, leaned forward. As he did so his feet slipped and he fell and, in falling, instinctively put his hand forward. It came into contact with the blades of the top fan, which resulted in a serious injury. Appellant had been operating the recleaning machine for four or five days before his injury and had repaired and set up hulling machines near Pomeroy. Asked if he was thoroughly familiar with them, he answered, "Well, pretty much."

Respondent corporation was generally engaged in the buying and freezing of foods and had a place of business in Kennewick. Defined, "the cleaning, hulling and vining was a part of freezing them." The crops were contracted for by respondent before they were planted.

Appellant filed with the department of labor and industries a report of the accident and claimed compensation under the workmen's compensation act. April 26, 1943, the supervisor of industrial insurance rejected the claim for the reason that, at the time of the injury, the workman (appellant here) was not engaged in work within the jurisdiction of the division of industrial insurance.

Appellant then applied for a hearing before the joint board. The application was granted June 22, 1943. Thereafter, appellant moved to dismiss the appeal. His motion was granted by an order which reads:

"Having reviewed the entire record and file at this time the Joint Board concludes that since the claimant does not wish to pursue the matter further at this time before the Joint Board and has taken another course of action against the employer, that the action of the Supervisor of Industrial Insurance of April 26, 1943, be and hereby is sustained and the appeal dismissed because claimant does not wish to pursue the matter further."

This action was commenced prior to the time the above order was made by the joint board.

Appellant contends that he was engaged in an extra-hazardous occupation at the time he was injured; that respondent, in failing to comply with the law relative to making returns and pay roll payments to the state, rendered itself liable to him. He argues that respondent did not comply with the provisions of the factory act, Rem. Rev. Stat., § 7658 (now Rem. Supp. 1943, § 7658 [P. P. C. § 699-93]), by not having the fan covered. He argues further that provisions of Rem. Rev. Stat. (Sup.), § 7676 [P. P. C. § 717-1], bring the occupation in which he was engaged within the compensation act.

The first question for decision is: Was appellant engaged in an occupation covered by the workmen's compensation act at the time he was injured? Preliminary to a discussion of that question we call attention to the following rule. Workmen's compensation acts are liberally construed to those who come within its provisions. However, individuals who make application for benefits are held to strict proof of their right to receive those benefits. *Kirk v. Department of Labor & Industries*, 192 Wash. 671, 74 P. (2d) 227; *Clausen v. Department of Labor & Industries*, 15 Wn. (2d) 62, 129 P. (2d) 777.

The determination of this question required an examination of certain sections of the workmen's compensation act, in order to ascertain the intention of the legislature as to who should come within the provisions of the act. In ascertaining the intent of the legislature, we must examine the statute as a whole so as to give every part effect if possible. *McKenzie v. Mukilteo Water Dist.*, 4 Wn. (2d) 103, 102 P. (2d) 251.

Rem. Rev. Stat. (Sup.), § 7674 [P. P. C. § 702-3], contains a definition of extrahazardous employment and a list of those certain occupations embraced within the term "extrahazardous." Following the enumeration, the statute provides:

"If there be or arise any extra-hazardous occupation or work other than those hereinabove enumerated, it shall come under this act, and its rate of contribution to the accident fund hereinafter established shall be, until fixed by

legislation, determined by the department hereinafter created, upon the basis of the relation which the risk involved bears to the risk classified in section 7676: *Provided, however,* The following operations shall not be deemed extrahazardous within the meaning, or be included in the enumeration of this section, to-wit: Using power-driven coffee grinders in wholesale or retail grocery stores; using power-driven washing machines, in establishments selling washing machines at retail; using computing machines in offices; using power-driven taffy pullers in retail candy stores; using power-driven milk shakers in establishments operating soda fountains; using power-driven hair cutters in barber shops; using power-driven machinery in beauty parlors; using power-driven machinery in optical stores.

"The director of Labor and Industries through and by means of the division of industrial insurance shall have power, after hearing had upon its own motion or upon the application of any party interested, to declare any occupation or work to be extra-hazardous and to be under this act."

Rem. Rev. Stat. (Sup.), § 7676, contains a classification of activities and the rates of payment to be made by the employer. This section does not pretend to define as "extrahazardous" the occupations named therein. It simply indicates the payments to be made by employers engaged in extrahazardous occupations as that term is defined by Rem. Rev. Stat. (Sup.), § 7674.

The plain meaning and intent of § 7674 is to make certain occupations extrahazardous and then give to the director of labor and industries the power and authority to bring additional occupations under the act.

Unless an employee is engaged in one of the enumerated extrahazardous occupations, or in an occupation classified by the department as extrahazardous under the authority of law, he is not within the compulsory operation of the act. *Parker v. Pantages Theater Co.,* 143 Wash. 176, 254 Pac. 1083; *Denny v. Department of Labor & Industries,* 172 Wash. 631, 21 P. (2d) 275; *Berry v. Department of Labor & Industries,* 11 Wn. (2d) 154, 118 P. (2d) 785, 140 A. L. R. 392; *Koreski v. Seattle Hardware Co.,* 17 Wn. (2d) 421, 135 P. (2d) 860.

The work in which appellant was engaged was not

one mentioned in § 7674, and the record is clear that the department had never attempted to bring that work under the act. We must therefore hold that appellant was not engaged in an employment which came under the provisions of the workmen's compensation act.

■ Appellant's next contention, that respondent is liable because it had not complied with the provisions of Rem. Rev. Stat., § 7658, known as the "factory act," is without foundation. The act applies only to machinery used in factories, mills, or workshops. Appellant was not engaged in work, then, in a factory, mill, or workshop and, for that reason, cannot claim protection under the act.

Any extension of the provisions of the statute to work outside of the places now mentioned in the act is a prerogative of the legislature and not of the courts.

■ We are finally brought to a consideration of the question of negligence on the part of respondent in not providing a safe place for appellant to work and the assumption of risk and contributory negligence on the part of appellant. It is unnecessary to discuss the question of negligence for the reason that appellant assumed the risk of his employment.

The facts in this case bring it clearly within the rule laid down in *Cummins v. Dufault*, 18 Wn. (2d) 274, 139 P. (2d) 308. In that case, the plaintiff was injured when he fell from a tramway, or walk, while pushing hops into bins in a kiln. He had started to work one day previous to the day he was injured and knew of the conditions surrounding the place of work. In holding that he assumed the risk of the danger incident to the work he was doing, this court stated:

"If the condition of the walk due to the burlap condition contributed to his fall, it was a condition which he assumed when he undertook the task assigned to him. He saw the tramway when it was clear of hops, and it was his duty to notice the condition. . . .

"While it is true that respondent had not worked in a hop kiln before, he had had some experience with hops and had spent many years working on farms. His experience must have taught him to care for himself while engaged in various farm activities. It could not but have been appar-

ent to him in the course of the ten or sixteen trips which he made from the drying room to the bins and return that there was a considerable quantity of loose leaves upon the walk or tramway, and that they, like straw or grain, made the walk slippery. The evidence is confusing whether the lupulin from the hops made the walk sticky or slippery, but, regardless of that fact, respondent was charged with notice of the condition which he had assisted in bringing about upon the walk. The tramway, the manner in which it was constructed, its height from the floor below, the burlap and the way in which it was fastened to the west side of the walk, the piling of loose hops against the burlap, causing it to bulge, the fact that loose hops were upon the tramway, were things which the respondent saw. The dangers incident to his task were open, obvious, and evident, and were assumed by him. If respondent was too far to the west of the center line of the walk when he stumbled, his position there was due to his own carelessness or momentary forgetfulness. There can be no doubt that he did not pay any attention to the walk piling up with loose leaves and forgot that he must watch the side of the walk and where he was walking. This is not an excuse. [Cases cited.]

"He cannot say that he forgot or did not pay any attention to the danger and then recover for personal injuries caused by his own neglect and forgetfulness."

The situation of the fan and the fact that it was not covered was plainly evident to appellant. He had worked on the machine for several days and knew the location of the fan and must have realized that it would be injurious to anyone who fell into it. He was in charge of and operated the machine, knew its defects, if any there were, and was fully acquainted with its operations. It is apparent that appellant had full knowledge of the slippery and unsafe condition of the portions of the machine upon which he stood when he attempted to pour water into some parts of it.

The evidence proves without any doubt whatever that appellant assumed the risk of his experiment in attempting to clean the machine in the manner described by him. Under the circumstances, as shown by the statement of facts, appellant cannot be allowed to charge his employer with liability.

The trial court ruled correctly in granting the motion for nonsuit, and its judgment dismissing the action will be affirmed.

BEALS, C. J., MILLARD, STEINERT, ROBINSON, JEFFERS, and GRADY, JJ., concur.

BLAKE and MALLERY, JJ., dissent.