[No. 36839.   Department Two.   July 23, 1964.]

MARGARET CLOSSIN, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES *et al., Appellants.**

*The Attorney General, John J. Quine* and *William J. Van
Natter, Assistants,* for appellant Department of Labor and
Industries.

*Fredrickson, Maxey & Bell, Leo H. Fredrickson,* and *A. O.
Colburn,* for appellant Charles C. Parsons.

*Kizer, Gaiser, Stoeve, Layman & Powell, William J.
Powell,* and *Robert E. Stoeve,* for respondent.

FINLEY, J.—This is an appeal from a judgment granting
benefits under the Industrial Insurance Act to the widow
of one of the employees of a Spokane florist. Two issues
are presented: (1) whether the employee, Charles Clossin,
was acting within the scope of his employment at the time
of the automobile delivery-van accident which led to his

*Reported in 394 P. (2d) 363.

death, and (2) whether the nature of his employment as a florist's deliveryman was such as to fall within the mandatory coverage provisions of the act. The trial court answered both questions affirmatively, reversing in each instance a conclusion of the Board of Industrial Insurance Appeals.

Concerning the first issue, there is no direct evidence as to whether Mr. Clossin was going about the business of his employer or was going home for lunch at the time of the accident. He was killed shortly after 12:30 p.m., on April 5, 1960; when driving the florist's Volkswagen delivery van, he collided with another vehicle, and overturned. Mr. Clossin had been traveling along a route which led directly from the florist shop to both his home and the city dump, some distance beyond his home. The scheduling of his lunch hour was flexible, dependent upon the time deliveries had to be made and his other duties. Indicative that the city dump was his destination, the delivery van contained some crates of discarded flower bulbs, the disposal of which fell within Clossin's general duties. In addition, he had not telephoned his wife to inform her that he was on his way home for lunch, a practice from which he rarely deviated. On the other hand, the delivery van was not normally used for rubbish disposal, and Clossin may have been taking the discarded flower bulbs to his home for his own use, as was permitted by the florist. Mr. Clossin had recently set up a hobby greenhouse at his home.

On this conflicting evidence the trial court found as a matter of fact that Clossin was acting in the scope of his employment. It is now settled that the Supreme Court will not retry controverted issues of fact on appeal, but will accept a trial court's findings when they are supported by substantial evidence. *Benedict v. Department of Labor & Industries* (1963), 63 Wn. (2d) 12, 385 P. (2d) 380; *Pend Oreille Mines & Metals Co. v. Department of Labor & Industries* (1963), 63 Wn. (2d) 170, 385 P. (2d) 856. Whether he was en route to his home or to the dump appears to us to be a factual question, and its disposition by the trial court must stand.

The second issue requires a determination of whether the performance of motor delivery for a florist doing business in the manner of Coldwell-Garland Florist constitutes "extrahazardous" employment and so comes within the mandatory coverage of the Industrial Insurance Act. RCW 51.12.010 defines extrahazardous employment to include ". . . teaming, truck driving, and motor delivery, including drivers and helpers, in connection with any occupation *except agriculture*; . . ." (Italics ours.) We must, therefore, determine whether the employer's occupation (with which the delivery was connected) is agricultural in nature. For this purpose it is necessary to set out further details concerning the nature of this particular business operation.

The Coldwell-Garland Florist is a nursery and florist operation which is spread over three quarters of a city block in the Garland district of Spokane. Located on the business premises are several greenhouses, intensive open air production facilities, and a retail florist shop. Of the nine employees, three are engaged in the retail sales aspect of the business. Sixty-four per cent of the 1959 gross income produced by the entire operation was generated by the sale of products grown on the premises; the remainder, by the sale of related items purchased elsewhere, such as sprays, seed, plant containers and garden tools.

The Department of Labor and Industries has for some time classified the operation as agricultural, and so exempt from the act. In making that determination the department applied its standard rule of thumb which grants agricultural status to any business which grows over 50 per cent of the products it sells. The trial court was unable to agree that such a standard was properly applicable in the present situation and held that the retail side of the florist business is nonagricultural. We agree.

The facts of the instant case bring it within the scope of the ruling of this court in *Berry v. Department of Labor & Industries* (1941), 11 Wn. (2d) 154, 118 P. (2d) 785, 140 A.L.R. 392. In that case a farmer who both operated a wheat farm and hauled wheat for hire was held to have

been engaged in two distinct occupations, the latter of which was extrahazardous. We said:

"An employer may, at one and the same time, be engaged in two distinct employments, one of which is extrahazardous and within the scope of the statute, while the other is not. . . . The test . . . is not whether such activities constituted his principal occupation, but rather whether his trucking business was carried on *in connection with* his agricultural occupation in the conduct of his farm, or as a separate and distinct occupation. . . ." (Italics ours.)

Coldwell-Garland Florist, the employer in the instant case, was likewise engaged in two different occupations. The first was the growing of flowers, plants and shrubs; the second, the wholesaling and retailing of flowers, plants and related items—some produced on the premises and some purchased elsewhere for resale.

We here express no opinion concerning the nature of the first, the intensive growing of plants in the nursery. While we note that such operations occasionally have been found to be nonagricultural for the purposes of workmen's compensation participation, primarily due to the "industrial" rather than agrarian nature of the production methods, *Hein v. Ludwig* (1935), 118 Pa. Super. 152, 179 Atl. 917, any such determination would be unnecessary in the instant case.

■ The retailing part of the business is clearly a separate and distinct occupation from that of growing the plants. The test of the *Berry* case is whether the questioned activity is carried on "in connection with" the agricultural occupation, and so implies some necessary or natural connection which is absent in the present case. The retail end of the florist business can be, and indeed usually is, carried on without growing the plants and flowers which are sold. The merger of the retail function with the production end cannot relieve a business of coverage otherwise incident to the retail operation alone. The two distinct aspects or occupations must be considered separately in determining the application of the Industrial Insurance Act.

As the primary duty of the deceased employee was motor delivery in connection with the nonagricultural retail func-

tion, the mandatory provisions of the act applied. The judgment of the trial court awarding the widow the pension and benefits under the act should be affirmed. It is so ordered.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

October 16, 1964. Petition for rehearing denied.