[No. 53-40495-3.   Division Three.   May 12, 1970.]

JOE H. HEINTZ, *Appellant*, v. JACK LABBEE *et al., Respondents.*

*Hovis, Cockrill & Roy* and *Ted A. Roy,* for appellant.

*Halverson, Applegate & McDonald* and *Thomas B. Grahn,* for respondents.

EVANS, C. J.—This is an action by an employee, Joe Heintz, against his employer, Jack Labbee, and the Carborundum Company seeking damages for personal injuries received by plaintiff in a grinding-wheel accident. The trial court ruled that plaintiff's employment at the time in question fell within the compulsory classifications of the Industrial Insurance Act and granted a summary judgment of dismissal only as to defendant Labbee. The Carborundum Company is not a party to this appeal by plaintiff Heintz.

The matter is before this court upon a short record. The stipulation reads as follows:

The plaintiff, Joe Heintz, has been employed by the defendant, Jack Labbee, as foreman of Labbee's Harrah ranch which consists of approximately 1400 acres devoted principally to the raising of mint and sugar beets, as well as pasture and cattle. The number of acres devoted to mint growing was approximately 450 acres in 1964. The plaintiff's duties have been the general overseeing of the workmen and all of the operations.

The defendant, Labbee, also owns a mint distillery located on the Harrah ranch, and generally does some custom mint distilling for neighboring farmers. In the year 1964, custom distilling was done for two farmers, Harold Heins and Joe Favilla. When custom mint distilling is done by Labbee, he undertakes the entire operation connected with the harvesting and distilling process. The mint is first mowed and windrowed. It is then allowed to wilt for a period of time. A chopper then picks up the mint, chops it and blows it into a truck which, in turn, carries it to the distillery where a lid is placed over the hopper on the truck and steam injected to extract the mint oils. The mint hay does not leave the truck, but is discarded after the oil is extracted. The chopper used to pick up the mint and chop it is the same chopper that is used to harvest corn silage. The plaintiff's duties as foreman include seeing that the chopper knives are kept in a sharpened condition, and whenever time permits, interspersed with his other duties of overseeing operations both connected and disconnected from the mint operations, he sharpens the blades at the farm machine shop where all general farm machinery repair and adjustments are made. The manual function of sharpening the mint knives is done sometimes by other employees. The sharpening of the knives was usually done as a time filler, sometimes by employees who are not connected with the mint harvesting.

On September 13, 1964, the defendant, Jack Labbee, was engaged in doing custom mint distilling for a neighboring farmer, Harold Heins. When the defendant Jack Labbee does custom mint distilling, his entire mint operation, including the necessary machinery and the distillery, is devoted exclusively to doing custom work, such that there is no intermingling of mint operations between Labbee's own mint and that of anyone else. On said date

the mint chopper was operating in the mint field of Harold Heins.

On Sunday, September 13, 1964, at about 5:30 p.m., the plaintiff had occasion to sharpen the mint chopper's knives for use in the custom work for Harold Heins. He was using the grinding stone used for this purpose. While sharpening one of the blades a wire which was wrapped around the grinding stone became disconnected and injured him. The removal of the blades from the chopper was not performed by the plaintiff. The farm machine shop where plaintiff was injured while sharpening the mint knives is situated approximately 1000 feet from the mint distillery on Labbee's Harrah ranch. The machine shop in no way serves the distillery other than incidentally such as for the sharpening of chopper knives or the repair of equipment.

Plaintiff makes five assignments of error, all of which concern a single issue: Did the court err in holding as a matter of law that the work plaintiff was engaged in falls within the compulsory coverage provisions of the Washington State Industrial Insurance Act?

In arriving at this conclusion, the trial court first observed that agricultural pursuits per se are not within the compulsory provisions of the Industrial Insurance Act. Counsel for both parties agree. *Wineberg v. Department of Labor & Indus.*, 57 Wn.2d 779, 780, 359 P.2d 1046 (1961).

■ The trial court next determined that defendant's mint distillery constituted a "factory" as defined in RCW 51.08.090 as follows:

"Factories." "Factories" means undertakings in which the business of working at commodities is carried on with power driven machinery, either in manufacture, repair, or change, and includes the premises, yard, and plant of the concern.

With this we agree. Power-driven machinery is applied to a product (mint hay) which undergoes "manufacturing" or "change" into mint oil. In this respect, a mint distillery is distinguishable from a hay baler (*Barney v. Anderson,* 116 Wash. 352, 199 P. 452 (1921)); a bean recleaning and picking machine (*DeHaas v. Cascade Frozen Foods, Inc.,* 23

Wn.2d 754, 162 P.2d 284 (1945)); and a hop-picking and recleaning machine (*Blanco v. Sun Ranches, Inc.*, 38 Wn.2d 894, 234 P.2d 499, 235 P.2d 830 (1951)). The distinguishing feature is pointed out in *Blanco v. Sun Ranches, Inc., supra*, wherein the Supreme Court stated at page 898:

> While the operation involved in the instant case is thus more complete than that involved in the *DeHaas* case, the two operations are alike, in that agricultural products are dealt with in their natural state without any processing which changes the character of the original product.

While *Blanco* was concerned with the contention that the hop-picking machine was a factory within the factory act (RCW 49.20), the above analysis relies upon *DeHaas* which did involve the Industrial Insurance Act. It supports the trial court's finding that defendant was engaged in manufacturing which did effect a change in the basic product.

■ Plaintiff argues that the product ultimately sold by the farmer is mint oil, and not mint hay, and that the distilling process is no different than routine hay baling or hop cleaning, all of which activities are necessary for the farmer to put his product in a marketable form. The trial court recognized the merit of this argument in observing that if a farmer distilled his own mint hay, the total process of raising, harvesting and distilling would be an agricultural pursuit. While it may well be that a farmer distilling mint hay which he has grown can be said to be engaged in an overall agricultural pursuit, the custom distiller, who need not be a farmer at all, does not necessarily fall within the same category. While defendant Labbee engaged in his own farming operations, he also engaged in commercial distilling for others. The distinction has been recognized by the Supreme Court in *Berry v. Department of Labor & Indus.*, 11 Wn.2d 154, 118 P.2d 785, 140 A.L.R. 392 (1941) and *Clossin v. Department of Labor & Indus.*, 64 Wn.2d 783, 394 P.2d 363 (1964). In *Berry*, the employer was a wheat farmer who was also in the business of hauling wheat for other farmers, for which a charge was made. The employee was injured while engaged as a driver's helper on

the farmer's truck then being used to haul wheat for other farmers. The court held that, while the farmer would be exempt in hauling his own wheat to market, he was engaged in "transfer, drayage and hauling" while doing custom hauling and thus subject to the mandatory coverage of the act. In so holding, the court stated at page 159:

An employer may, at one and the same time, be engaged in two distinct employments, one of which is extrahazardous and within the scope of the statute, while the other is not. To the extent that one of the employer's activities is extrahazardous, he is an employer within the purview of the act, and subject thereto. The test to be applied to Mr. Faires' trucking operations, in order to determine their character for the purposes of this case, is not whether such activities constituted his principal occupation, but rather whether his trucking business was carried on in connection with his agricultural occupation in the conduct of his farm, or as a separate and distinct occupation. *Wendt v. Industrial Insurance Commission,* 80 Wash. 111, 141 Pac. 311; *State v. Business Property Security Co.,* 87 Wash. 627, 152 Pac. 334; *Denny v. Department of Labor & Industries,* 172 Wash. 631, 21 P. (2d) 275; *Lunday v. Department of Labor & Industries,* 200 Wash. 620, 94 P. (2d) 744.

. . .

. . . The hauling which he did for his neighbors had nothing to do with the growing, harvesting, or marketing of the wheat raised on his own farm. While he was a farmer and an agriculturist, the business of trucking and hauling which he conducted was independent of, and entirely dissociated from, his own agricultural activities, and nowise incidental thereto or connected therewith. It is not enough that one engaged in the business of trucking or hauling for hire should also own and operate a farm. To avoid being within the scope of the act, the trucking or hauling must bear some relation to, or be in some way connected with, the operation of the farm or the disposal of its produce.

In *Clossin,* the employer was engaged in the agricultural business of growing flowers, plants and shrubs, and also in the retail business of selling and delivering them. The em-

ployee was killed while engaged in the retail delivery part of the business. There the court stated at page 786:

> Coldwell-Garland Florist, the employer in the instant case, was likewise engaged in two different occupations. The first was the growing of flowers, plants and shrubs; the second, the wholesaling and retailing of flowers, plants and related items—some produced on the premises and some purchased elsewhere for resale.
>
> .  .  .
>
> The retailing part of the business is clearly a separate and distinct occupation from that of growing the plants. The test of the *Berry* case is whether the questioned activity is carried on "in connection with" the agricultural occupation, and so implies some necessary or natural connection which is absent in the present case. The retail end of the florist business can be, and indeed usually is, carried on without growing the plants and flowers which are sold. The merger of the retail function with the production end cannot relieve a business of coverage otherwise incident to the retail operation alone. The two distinct aspects or occupations must be considered separately in determining the application of the Industrial Insurance Act.

██ The holdings in *Berry* and *Clossin* demonstrate that the fact an agricultural product was involved is not determinative of whether the overall operation is agricultural. Likewise, in the instant case, the fact that mint hay is an agricultural product does not determine the character of the mint distilling process.

The trial court found defendant Labbee was engaged in two separate and distinct occupations. One, the agricultural pursuit of raising mint hay upon his own farm; and the other, the commercial distilling of mint hay into mint oil for other farmers. We agree. The distiller need not be a farmer and in the present instance the distiller was not the farmer who grew and raised the mint hay. We find no necessary or natural connection between the occupation of raising and distilling mint hay for one's self and the separate occupation of distilling mint hay for others.

Plaintiff attempts to distinguish *Berry* by pointing out that a specific statutory agricultural exclusion was there

involved, while agriculture in the posture of the present case is without the act only by reason of its noninclusion therein. However, in *Berry* the precise issue was whether the questioned activity was agricultural. That is the precise issue in the instant case. In *Berry,* it was argued the term "agriculture" includes the hauling of farm products to market, just as in the instant case plaintiff argues the term "agriculture" includes the distilling of a farm product, to wit: mint hay. As stated by the court in *Berry v. Department of Labor & Indus.,* 11 Wn.2d 154, 118 P.2d 785, 140 A.L.R. 392 (1941) at 163:

> Whether or not this is true, is immaterial. The statute does not directly exclude the occupation of agriculture as such. Agriculture remains without the scope of the act, because it is not included therein by any specific designation. The occupation of transfer, drayage, and hauling for hire is expressly included. It may be said that agriculture is within the purview of the act, in so far as its products are concerned with the operations of transfer, drayage, or hauling for hire.

Similarly, it may be said in the present case that agriculture is within the purview of the act insofar as its products are concerned with the separate operation of distilling mint hay for hire.

Plaintiff also argues there is no valid basis for a distinction between distilling one's own mint hay and custom distilling and points out that in *Barney v. Anderson, supra,* custom hay baling was involved and the court nevertheless held the operation to be agricultural and not within the act. However, in *Barney* the hay baling was done by defendant in exchange for threshing work previously done by a neighbor. That this constitutes a departure from the true custom operation was recognized by the Supreme Court in *Berry* at 158:

> Had Mr. Faires been exchanging his hauling service for work on his farm, a different question might have been presented, upon which we express no opinion.

Just as there is a significant difference between the operation of a farmer distilling hay grown by himself and a

person engaged in distilling mint hay for others for hire, there is also a significant difference between activities performed by neighboring farmers on an exchange basis and activities performed on a for-hire basis. Furthermore, the hay baling involved in *Barney,* as already pointed out, does not constitute manufacturing in the sense of effecting a change in the basic product.

Plaintiff also contends even if mint distilling were considered a manufacturing operation, gathering the crop from the field by means of a chopper which picks it up, chops it and blows it into trucks for conveyance to the distilling site, would be incidental to farming and not to manufacturing. With this contention we cannot agree. The stipulated facts establish that mint hay after being grown, is mowed, windrowed and then allowed to wilt for a period of time. It is only after the hay has been severed and properly wilted that in a single continuous operation it is chopped and blown into trucks which are driven to the still where a lid is clamped on, steam injected and the mint oil extracted. For the purposes of this case, the agriculture process ends prior to the chopping. Commencing with the chopping, the steps that follow are consistent with distilling and inconsistent with agriculture. Plaintiff was injured while engaged in sharpening blades for the chopper. He was performing duties connected with defendant's distilling activities. This gave rise to an employment separate and distinct from plaintiff's duties in connection with the general farming conducted by defendant. See *Monroe Calculating Mach. Co. v. Department of Labor & Indus.,* 11 Wn.2d 636, 120 P.2d 466 (1941); *Morris v. Department of Labor & Indus.,* 179 Wash. 423, 38 P.2d 395 (1934); *Denny v. Department of Labor & Indus.,* 172 Wash. 631, 21 P.2d 275 (1933); *Wendt v. Industrial Ins. Comm'n,* 80 Wash. 111, 141 P. 311 (1914).

Judgment is affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied June 26, 1970.