A. MAZZETTI & SONS, INC., Defendant
Below, Appellant,

v.

Joseph RUFFIN and First State Mason-
ry, Inc., Claimant and Defendant
Below, Appellees.

Supreme Court of Delaware.

Submitted Sept. 18, 1981.

Decided Nov. 18, 1981.

B. Wilson Redfearn and Colin M. Shalk (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant-appellant.

George B. Heckler, Jr. (argued) of Heckler & Cattie, P. A., Wilmington, for claimant and defendant-appellees.

Before NcNEILLY, QUILLEN and HORSEY, JJ.

HORSEY, Justice.

The ultimate question in this workmen's compensation appeal is whether claimant at time of injury was in a joint or a concurrent employment relationship with his two employers. Both employers, A. Mazzetti & Sons, Inc. (A. Mazzetti) and First State Masonry, Inc. (First State), appeal a decision of the Superior Court reversing the Industrial Accident Board's finding that their employee, Joseph Ruffin, was at time of injury in their "joint service" within the meaning of 19 *Del.C.* § 2354.[1] As a consequence of this finding, both employers were required under § 2354 to contribute to the payment of Ruffin's workmen's compensation benefits. We reverse.

Ruffin, a construction laborer, injured a toe of his left foot in a construction accident. The accident occurred when an iron form dropped on his foot as he and his foreman, Robert Bruton, were setting the form in place in preparation for pouring concrete for a building foundation. Thinking the injury to be of no consequence, Ruffin did not report it to Bruton until after Ruffin had worked an undetermined further number of days. By then, his foot

had become infected; and because of a diabetic condition, Ruffin's left leg was eventually amputated.

I

Petitioning the Industrial Accident Board for compensation for both total disability and permanent injury, Ruffin placed the date of his injury as *on or about* December 12, 1978; and Ruffin sought compensation from both A. Mazzetti and First State, in reliance on 19 *Del.C.,* § 2354. Thus, he contended that when injured he was in the "joint service" or employ of both A. Mazzetti and First State within the meaning of § 2354.

A. Mazzetti and First State agreed that Ruffin had suffered an industrial accident for which he was entitled to compensation. However, they disagreed as to who his employer was at the time of injury. The two companies, though closely related as will be seen, had different compensation carriers. Also, the awards were for substantial sums. Hence, the real parties in interest are the compensation carriers and the two employers are but the nominal protagonists.

The Industrial Accident Board found Ruffin at time of injury to have been in the "joint service" of A. Mazzetti and First State under 19 *Del.C.,* § 2354. The Board also found Ruffin's date of injury to be "on or about" December 12, 1978. Applying § 2354, the Board ordered the respective compensation carriers of A. Mazzetti and First State to share equally the cost of Ruffin's compensation benefits.

On appeal by First State, Superior Court reversed for lack of "substantial competent evidence" to support the Board's finding of joint liability. The Court found the facts to support at most a "concurrent" or "dual"— but not a joint—employment relationship. The Court then remanded the case to the Board for the limited purpose of determin-

---

1. 19 *Del.C.* § 2354 provides:

"*§ 2354. Contribution by 2 or more employers.* Whenever any employee, for whose injury or death compensation is payable under this chapter, at the time of the injury is in the joint service of 2 or more employers, subject to this chapter, such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employee, regardless of for whom such employee was actually working at the time of injury."

ing who Ruffin was "working for" when injured.

A. Mazzetti appeals, arguing that the Court entered in its standard of review. A. Mazzetti contends that the Court improperly acted as a fact finder and then substituted its own findings of fact for those of the Board. Urging affirmance of the Board's decision under the substantial evidence rule,[2] A. Mazzetti contends that there was substantial evidence to support the Board's finding that Ruffin was in the joint employ, i.e., "joint service", of A. Mazzetti and First State when injured so as to sustain the Board's joint liability holding.

First State disagrees but cross appeals. It contends: (a) that the Board's findings were insufficient to support a joint employment relationship; and (b) that Superior Court correctly found Ruffin to be in a concurrent or dual employment relationship with A. Mazzetti and First State. From this, First State argues it necessarily follows that Ruffin could only have been *working for* one employer at a time. Since it was agreed that Ruffin was setting concrete forms when injured (whatever the date) and that form-setting was A. Mazzetti's assigned phase of the work, First State says that Ruffin was obviously only working for A. Mazzetti when injured. Hence, according to First State, remand is unnecessary; and this Court should make such finding. The consequence of finding Ruffin to have been working for A. Mazzetti when injured would, of course, be that A. Mazzetti alone is liable for Ruffin's compensation benefits.

## II

There is little, if any, dispute as to the material facts—other than as to the date of Ruffin's injury, or more precisely, the date he was found to have been injured. In December 1978 and for some weeks prior thereto, Ruffin, an hourly construction

worker, was in the employ of both A. Mazzetti and First State. Both concerns were involved in construction work, and both were owned and controlled by the families of Adolfo and Remo Mazzetti. A. Mazzetti, incorporated in 1955, usually engaged in general contracting work. Its only shareholders were Adolfo Mazzetti and his son, Remo. Adolfo, though President of A. Mazzetti, was no longer active in the business and his son, Remo, had been in charge of its day-to-day operations since 1957. Remo was "General Manager" of A. Mazzetti as well as its Secretary and Treasurer.

First State, incorporated in 1965, was also involved in construction work; and it too was controlled and managed by Remo Mazzetti who served as both President and "General Manager." He and his wife were First State's only shareholders. While A. Mazzetti usually acted as a general contractor, First State limited its activities to subcontracting for masonry, brick and concrete block work. As a general rule, First State and A. Mazzetti worked on different job sites.

Both companies shared the same building, the same telephone number and the same accountant. However, the two companies were maintained as distinct corporate entities. Separate sets of books and records were kept for each; that is, separate income and expense records, separate payroll-time records ad even separate lines of credit. But both companies had virtually the same employees—the same general manager, the same foremen, and the same laborers. As a necessary consequence, the same employees were freely transferred back and forth between the two companies.

On the particular job where Ruffin was injured, both A. Mazzetti and First State were acting as subcontractors for the general contractor. Indeed, they were the only subcontractors for the job. Each company's

---

**2.** The Delaware Administrative Procedures Act which governs proceedings before the Industrial Accident Board provides that a court's review of an administrative agency's decision "shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency." 29 *Del.C.* § 10142(d). Thus, Superior Court technically misstated the standard of review in stating that "substantial competent evidence" is required for affirmance of a finding of fact by the Board.

bid was for an identical sum, $35,000; and the two bids, submitted simultaneously, were in a format suggesting that they were to be considered as one bid for all the work to be subcontracted. Remo Mazzetti prepared the bids for both companies. A. Mazzetti contracted to do the following work: "excavation, patching of roadway and foundation excavation." First State contracted to do the "concrete work at sump, building, foundation, and pad." Remo Mazzetti's explanation of the identical sums bid for both portions of the job was simply that he expected each of his two companies to do "approximately" half of the work. He explained his admittedly less-than-clear bid breakdown of the work between the two companies as meaning that A. Mazzetti was responsible for the excavation and form-setting or "first stage" of the work and that First State was responsible for the pouring of the concrete for the foundation and slab, the "second stage" of the job. However, Remo Mazzetti qualified his descriptive two-stage division of the work as being only "approximately" so and as "about the way it works." As stated, Joseph Ruffin was injured in the formsetting or first stage of the work.

### III

The parties do not dispute the meaning of the term "joint service" as found in 19 *Del.C.* § 2354. The parties agree that "joint service" is synonymous with joint employment; and the Court below also equated "joint service" under § 2354 with joint employment. Hence, for these purposes, there is agreement that the terms are to be understood to be synonymous.

 There is also no dispute as to the meaning of the term "joint employment" and the distinguishing characteristics between a "joint employment" relationship and a "dual" or "concurrent" employment relationship. Both parties rely on the following descriptions of the terms as found in Larson's treatise, *Workmen's Compensation Law*:

"When a single employee works for two or more employers, an arbitrary two-way classification distinguishing 'joint employment' and 'dual employment' helps to sort out these almost infinitely varied cases.

Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation.

Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury.

Joint employment is possible, and indeed fairly common, because there is nothing unusual about the coinciding of both control by two employers and the advancement of interests of two employers in a single piece of work..." 1C Larson, Workmen's Compensation Law, § 48.40, p. 8–394 (1980).

Thus, a joint employment relationship exists between a single employee and two employers when he or she is under contract with both employers and the employee:

(1) is also under the simultaneous control of both employers; and

(2) performs services simultaneously for both employers; and

(3) the services performed for each are the same or closely related.

In contrast, a dual or concurrent employment relationship exists between a single employee and several employers when the employee is under contract with both employers and:

(1) the employers act independently of each other; and

(2) a specific portion of the employee's work time is separately allocated to each employer; and

(3) the employee's services performed at any given time for each employer are clearly separable and independent of the services performed for the other employer; and

(4) the employee does not perform simultaneously for both employers.

The Industrial Accident Board, in concluding that Ruffin was in the joint service and, hence, joint employ of A. Mazzetti and First State at time of injury, made the following express findings: (1) each company was under the same management (office as well as field); thus Ruffin was at all times under the control and direction of the same individuals, Remo Mazzetti and his foreman, Bruton, regardless of which company paid his wages; (2) the work undertaken by the two companies on this particular job was divided between them, with the same individual, Remo Mazzetti, determining for both companies what portion of the contracted-for work would be performed by each; (3) the "vast majority" of the employees, including Ruffin, worked for, and were freely interchanged between, the two companies: in December when the accident occurred Ruffin worked one week for First State, the next for A. Mazzetti, and the final two weeks for both; (4) Ruffin did not know on any given day which company he was working for, indicating to the Board, "the close similarity of the work done by both companies"; and (5) both companies used the same office building and the same accountant; and paychecks from both companies were signed by Remo Mazzetti.

The Court below disagreed as to the sufficiency of the evidence.[3] It viewed the evidence as insufficient to sustain a finding of joint employment and as adequate at best to establish a dual or concurrent employment relationship between Ruffin, A. Mazzetti and First State. The Court's reasons for disagreement with the Board's joint service finding were threefold: (1) the two companies were maintained as separate corporate entities; therefore the Board could not "pierce the corporate veil"; (2) the two companies were performing separate and distinct contractual undertakings; and (3) Ruffin, when injured, was performing "work for a particular employer" (though without stating what that work was or who it was for). As stated, the Court remanded the case to the Board to determine whether a concurrent employment relationship existed and, if so, who Ruffin was "working for" when injured. We conclude that the Court erred in ruling the evidence to be insufficient to establish a joint employment relationship.

■ The Board's joint service or joint employ finding must be affirmed because it was supported by substantial evidence that met the above-stated criteria for a joint employment relationship. Relating the evidence of record to the three elements of a joint employment relationship, the evidence clearly met the threefold test by establishing: (1) that Ruffin was under the simultaneous control of both A. Mazzetti and First State; (2) that Ruffin was performing simultaneous services for both employers; and (3) that the services which Ruffin performed for A. Mazzetti were closely related, if not the same, as those which he performed for First State.

Equally clearly, it seems to us, the record evidence could be construed as refuting the existence of a concurrent or dual employment relationship: that is (stated in the negative), that A. Mazzetti and First State were *not* acting independently of each other on this particular job; that a specific portion of Ruffin's work time was *not* separately allocated for each employer; and that Ruffin's services performed for A. Mazzetti at any given time were *not* clearly separable and independent from the services he performed for First State.

As to the required element of simultaneous control, the evidence is clear that on this job: the two companies, though maintained as separate corporate entities, were run by Remo Mazzetti as though they were

---

**3.** The Court did not find the facts relied on by the Board not to be supported by the record.

one in terms of management of employees; that Ruffin, along with 90 percent of all the officers and employees, including Remo Mazzetti, worked interchangeably with both companies; and that regardless of which of the two companies Ruffin was working for on any given day, his immediate field and management superiors were the same individuals. When asked how he distinguished his two roles as general manager of each company—when giving orders to his employees—Remo Mazzetti replied, "I knew what I was doing, but I can't say that every moment that I directed every move and said to do this as A. Mazzetti, and do that as First State; that's true." The frequency and informality in which the employees, including Ruffin, were "transferred" back and forth between the two companies demonstrates the degree of control that both companies simultaneously exercised over Ruffin.[4]

The evidence of simultaneous control also supports the second element of a joint employment relationship—that services were performed simultaneously by Ruffin for both companies. Not only Ruffin but his foreman, Bruton, also testified that on this job neither knew which company he was working for on any given day or during any given week until he received his paycheck at the end of that week. And Remo Mazzetti acknowledged that to be the fact. While Remo Mazzetti described the particular contract work as being divisible into a "two stage"[5] time frame—with A. Mazzetti responsible for the first stage work and First State the second—Remo Mazzetti then qualified this division of the work as not being that clear cut. (See page 1123 above.)

The time and payroll records of Ruffin's employment by the two companies largely refute any clear division of the work. In the month of December, Ruffin received six payroll checks—three from A. Mazzetti and three from First State. However, his first week's pay in December came not from A. Mazzetti but from First State; his second week's pay from A. Mazzetti; and his third and fourth weeks' pay was nearly equally divided between the two companies. Moreover, Ruffin's aggregate pay for the month of December from each company was also nearly equal in amount. Further, the contention that A. Mazzetti was responsible for form-setting and First State for pouring of concrete is refuted by other records indicating that the pouring of concrete did not occur until January, 1979, yet Ruffin's wages were paid by First State for the first week of December.

The foregoing evidence also supports the Board's finding of "close similarity of the work done by both companies" so as to satisfy the third element of a joint employment relationship—the "same or similar" characteristics of Ruffin's services for both employers. Neither Ruffin nor his foreman, Bruton, knew who he was working for on any given day until receipt of his paycheck at the end of the week. The two companies' similar bid proposals for work to be performed illustrate the same or similar characteristics of the work of each company. (See pages 1122–1123.)

Cases showing the interplay of the three elements of a joint employment relationship—simultaneous control, simultaneous service and service that is the same as or closely related to that performed for the other employer—are collected in 1C Larson, *supra*, at § 48.40.[6] As there stated:

"There has always been a noticeable reluctance on the part of Anglo-American courts to emulate the wisdom of Solomon and decree that the baby be divided in half. Courts are showing an increasing

---

4. No employment transfer was apparently made. Ruffin was not discharged by A. Mazzetti; then hired by First State; and later discharged by the latter; and rehired by the former. A book entry was simply made showing Ruffin to have been working the first week for First State and the second week for A. Mazzetti.

5. The record indicates that the term originated with counsel.

6. The cases cited by First State are sufficiently distinguishable on their facts or holdings from the instant case as not to be controlling or to require discussion.

tendency, however, to dispose of close cases, not by insisting on an all-or-nothing choice between two employers both bearing a close relation to the employee, but by finding a joint employment on the theory that the employee is continuously serving both employers under the control of both." 1C Larson *supra*, § 48.40, p. 8–395.

The decisive factor leading to a joint employment holding may be: (a) the practice between employers engaged in the same business of trading employees, *Maryland Cas. Co. v. Cowan*, La.App., 219 So.2d 530 (1969); (b) the fact that the injured employee was performing the same function for both employers, *Holdren v. Lease Management, Inc.*, 61 Mich.App. 508, 233 N.W.2d 59 (1975); (c) that the activities of the two companies (parent and subsidiary) were "intertwined" and the injured employee was on the payroll of both, *Musson v. Department of Labor & Indus.*, Wash.Supr., 78 Wash.2d 178, 470 P.2d 183 (1970); (d) that both companies controlled to a degree the details of the employee's work that resulted in his injury, *Famous Players Lasky Corporation v. Industrial Commission*, Cal.Supr., 194 Cal. 134, 228 P. 5 (1924); (e) the existence of a joint venture or undertaking which also involves joint control over a construction project, *Wilson v. Sirkin Building Corp.*, Fla.App., 336 So.2d 462 (1976); *Guilbeau v. Liberty Mutual Insurance Co.*, La. App., 324 So.2d 571 (1975), mod. 338 So.2d 600 (1976); or (f) that work is performed for a closely related business, *Del Peso v. H. A. Bar & Restaurant Co.*, N.J.Super.A.D., 75 N.J.Super. 108, 182 A.2d 373 (1962); *Gonzales v. P. K. Foods, Inc.*, N.Y.App., 22 A.D.2d 990, 254 N.Y.S.2d 927 (1964).

■ We think little significance should be attached to the fact that A. Mazzetti and First State were maintained as separate corporate entities in determining the nature of the relationship between them. A. Mazzetti's argument for finding a joint employment relationship was not based on any effort to "pierce the corporate veil" or finding that the one company was the alter ego of the other. Implicit in either a joint or a concurrent employment relationship is the existence of two separately identifiable and viable employers. *McGregor v. United Film Corp.*, La.App., 351 So.2d 1224 (1977).

Finally, the precise date in December of Ruffin's injury was never established. For this reason, the Board found Ruffin to have been in the joint service of A. Mazzetti and First State "on or about December 12, 1978." Hence, First State's reliance on A. Mazzetti's payroll records as showing its payment of Ruffin's wages for the week ending December 13 does not conclusively establish Ruffin to have been in the sole employ of A. Mazzetti when injured.

While the Board did not find A. Mazzetti and First State to have been engaged in a joint venture on the job in question, clearly there was substantial evidence for the trier of fact to conclude that the two companies were involved in a joint undertaking or common enterprise if not, strictly speaking, a joint venture. Each was clearly involved in a common venture—to construct a building. Each company bid the job as coordinate subcontractors submitting related, if not integrated, bids for the entire work that was put out for subcontract. In submitting the same dollar amounts on behalf of each company, Remo Mazzetti quite apparently arrived at a single figure for the entire subcontracting work and then divided it in half, with half assigned to each of his two companies. A. Mazzetti may have generally acted as a general contractor and First State a subcontractor; but on this particular job both were acting as subcontractors. Hence, there was sufficient record evidence of a joint undertaking by the two employers to sustain the Board's finding of joint service or a joint employment relationship. (See cases cited on page 1126 above.)

■ One final issue requires consideration. The Board, having found a joint service relationship, ruled that A. Mazzetti and First State were to share equally the cost of Ruffin's workmen's compensation benefits. 19 *Del.C.* § 2354 states in pertinent part that where joint service is found, "such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employee...." First State says that the Board's equal sharing of the cost ruling is contrary to the only evi-

dence of record as to the companies' respective "wage liability" to Ruffin. First State refers to Ruffin's 1978 W–2 forms indicating that Ruffin's wages for the year from A. Mazzetti were nearly twice those received from First State. That assumes § 2354 requires wage liability proportionality to be determined from a given time period of employment rather than on the basis of a particular job or employment undertaking. But § 2354 has no such limiting language. In this case the Board clearly related its joint service finding to the relationship of the parties on the particular job where Ruffin was injured. The evidence of record established that each employer paid approximately equal wages to Ruffin on this particular job until he ceased work due to his injury. Since the Board related its joint service finding to the job, it was reasonable as well as consistent for the Board also to relate its ruling on compensation contribution to the wages paid on this particular job. We affirm the Board's allocation of Ruffin's compensation payments between the responsible employers as supported by substantial evidence and permitted by law.

\* \* \*

REVERSED.