**Jeanne A. HUDSON, individually and as Executrix of the Estate of George E. Hudson, Vincent Oberle, George Dunn, et al. Plaintiffs,**

**v.**

**A.C. & S. CO., INC., et al. Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: March 25, 1987.
Decided: Oct. 8, 1987.

Robert Jacobs, of Jacobs & Crumplar, P.A., of Wilmington, for plaintiffs.

Douglas B. Catts, of Schmittinger & Rodriguez, P.A., Dover, for defendant Collier Carbon and Chemical Co.

---

TAYLOR, Judge.

Plaintiffs Vincent Oberle, George Hudson and George Dunn [plaintiffs], who are or were employed at a Tidewater/Getty/Texaco plant[1] at the petroleum refinery at Delaware City, Delaware, seek to recover for diseases which they allege were caused by exposure to asbestos while working at the plant. Defendant Collier Carbon and Chemical Company [Collier] has moved for summary judgment on the ground that plaintiffs' tort action is barred by 19 *Del.C.* § 2304.

Collier's relationship to the refinery and to plaintiffs exists by virtue of a joint venture agreement which Collier and Tidewater Oil Company entered into on October 18, 1960 for the construction and operation of a plant to produce naphthalene [Joint Venture Agreement] and a plant operating agreement [Plant Operating Agreement] of the same date between Tidewater as joint venturer, Collier as joint venturer, and Tidewater as operator, which agreement is incorporated by reference in the Joint Venture Agreement.[2] The joint venture remained in effect until December 31, 1980.

**I**

Plaintiffs allege that Collier is liable to them for diseases by virtue of the joint venture. Collier seeks summary judgment on the ground that plaintiffs are barred from suing Collier by virtue of 19 *Del.C.* § 2304.

Collier rests its position on the decision of this Court in *Iocono v. Air Products,* Del.Super., C.A. No. 82C–JN–117, Bifferato, J. (July 24, 1985) (Letter Opinion). *Iocono* involved a tort action by a former employee at the same plant in which these plaintiffs developed a disease alleged to have been caused by exposure to benzene at the plant. Collier, as here, was also a defendant in *Iocono.* In that case, Collier moved for summary judgment on the same ground asserted here, relying on the same joint venture agreement which is asserted here. In *Iocono,* the Court announced the following standard to determine whether

Collier would be protected under 19 *Del.C.* § 2304:

Collier Carbon's liability as a member of a joint venture depends specifically on the rights and liabilities of a joint venturer. If the sharing of losses is an essential part of a joint venture, then 19 *Del. C.* § 2304 will bar this action. If, however, the sharing of losses is not essential, then the outcome will be derived from examination of the contractual relationship. *See Loden, supra,* [*Loden v. Getty Oil Company,* 316 A.2d 214, Del. Super., *aff'd.* 326 A.2d 868 (1974)]. If the losses or expenses related to employees of the joint venture are to be borne by one party, that party only will be protected by § 2304. If the losses are divided, then a question of fact exists as to whether worker's compensation is one or all the parties' responsibility. *Iocono,* letter op. at 4.

Applying that standard to the Joint Venture Agreement, this Court held:

the contract between Getty and Collier Carbon expressly contemplates the sharing of expenses. *See Plant Operating Agreement,* ¶ 13–22, 23, 24. Thus, Collier would be required to answer a claim for worker's compensation by virtue of the plant operating agreement. The potential liability gives Collier the protection of the exclusive remedy statute. *Iocono,* letter op. at 5.

Plaintiffs ask the Court to revisit the issues decided in *Iocono* and to find that those issues require resolution of facts and inferences therefrom which are in dispute and cannot be resolved at the summary judgment stage.

It is true that *Iocono* is not binding upon plaintiffs under principles of res judicata or collateral estoppel. These plaintiffs were not parties in *Iocono,* making res judicata inapplicable; and collateral estoppel based on *Iocono* has not been claimed. Therefore, *Iocono* will be considered under principles of stare decisis to determine whether

---

1. The name Tidewater or Getty will be used without distinction when referring to the agreements mentioned herein.

2. The designation joint venture agreement will be used without distinction when referring to either or both agreements.

the factual and legal issues considered in *Iocono* are the same as those presented here. *Iocono* does not indicate that in that case the Court was faced with a contention that a fact controversy existed which barred summary judgment. That issue will be addressed at this point.

Although plaintiffs contend that a fact issue exists which is essential to the resolution of the question of whether this tort suit against Collier is permissible, plaintiffs have not presented evidentiary material showing that the parties are relying on disputed facts relating to the issue being considered here. Both parties cite the same Joint Venture Agreement and Plant Operating Agreement between Tidewater and Collier, which were considered in *Iocono*. Plaintiffs make the assertion in their brief that "they were employees only of Getty and were controlled, paid, and supervised by Getty personnel"; and "[a]fter plaintiffs were hired by and began working for Tidewater there is no indication that their employment status was changed from that of Tidewater employees to that of employees of either of the two Joint Venturers, or the Joint Venture as an entity"; that plaintiffs "were dealt with and supervised in the same manner, and by the same personnel, as they had been before said Agreement"; that the "only duly registered Workmen's Compensation carrier was Getty"; that "Joint Venturer Collier Carbon did not determine to purchase Workmen's Compensation insurance for itself, or for the Joint Venture".

Collier in its reply brief does not address the facts which plaintiffs rely on and because of that, the Court assumes that Collier does not dispute those facts. Therefore, the Court accepts those facts as being undisputed. Accordingly, insofar as those facts are pertinent to the issue raised by this motion, the Court will treat those facts as established.

The thrust of Collier's argument is that the reasoning of *Iocono* immunizes the joint venturer Collier from tort liability. The reasoning of *Iocono* is that if, under a joint venture contract, a joint venturer could be held liable for worker's compensa-

tion payments, that party is entitled to protection under 19 *Del.C.* § 2304. This search leads to the determination of the party or parties liable for expenses or losses incurred by the joint venture.

■ The Court must now focus upon the Joint Venture Agreement between Tidewater and Collier dated October 18, 1960 and the Plant Operating Agreement of the same date between Tidewater as joint venturer, Collier as joint venturer, and Tidewater as operator. Each agreement provides that all costs and expenses of the joint venture were to be borne equally by the joint venturers and that the actions of Getty as operator of the joint venture are at the expense and risk of the joint venturers, unless caused by act of bad faith or willful misconduct of Tidewater. *Plant Operating Agreement* at ¶ 13. These documents impose an obligation upon Collier to pay one-half of all expenses of the joint venture, which, of course, included the obligaton of the joint venture for worker's compensation insurance. *Id.* at ¶¶ 15, 21.

The Court notes that the limitation in the agreement does not protect the joint venturer against claims by third parties. A third person who has a claim growing out of a breach of duty by the joint venture is entitled to recover for his entire claim against any member of the joint venture. 48A *C.J.S.* Joint Ventures § 63 at 507. Each joint venturer is liable to third persons for the acts of other members of the joint venture within the scope of the joint venture. *Id.* Thus, an employee of the joint venture is an employee of each of the joint venturers and each joint venturer is jointly and severally liable for the employee's injury while working for the joint venture. 46 *Am.Jur.2d* Joint Ventures § 58 at 78. The joint venturer which makes the payment to the third party may then invoke the sharing provision of the agreement against the other joint venturer.

The parties in their agreement have described their relationship as a joint venture and have provided that disputes will be resolved according to New York Law applicable to general partnerships. They have provided for the sharing of expenses of the

operation and have established the allocation. Implicit in the provision for sharing expenses of operation is the sharing of losses of the venture. Instead of providing for a division of profits from the joint venture, as is more customary, they have provided for equal division between the joint venturers of the product manufactured by the joint venture plant. From this analysis, I find that all of the requisites qualifying this relationship as a joint venture are present. 46 *Am.Jur.2d* Joint Ventures § 7 at 27–29.

The Delaware Supreme Court in *A. Mazzetti & Sons, Inc. v. Ruffin,* Del.Supr., 437 A.2d 1120 (1981) considered the applicability of the joint service concept in determining liability for worker's compensation. The reference section of the Delaware Workmen's Compensation Law is 19 *Del.C.* § 2354 which provides for apportionment of compensation between employers where an employee is in joint service of multiple employers. The Court noted that joint employment relationship exists if the employee:

(1) is also under the simultaneous control of both employers; and

(2) performs services simultaneously for both employers; and

(3) the services performed for each are the same or closely related.

*Ruffin,* 437 A.2d at 1123. By way of illustration, the Court tested the following alternative "decisive" factors which may constitute joint employment:

(a) the practice between employers engaged in the same business of trading employees, [citation]; (b) the fact that the injured employee was performing the same function for both employers, [citation]; (c) that the activities of the two companies (parent and subsidiary) were "intertwined" and the injured employee was on the payroll of both, [citation]; (d) that both companies controlled to a degree the details of the employee's work that resulted in his injury, [citation]; (e) the existence of a joint venture or undertaking which also involves joint control over a construction project, [citation]; or

(f) that work is performed for a closely related business, [citation].

*Ruffin,* 437 A.2d at 1126.

1C *Larson's Workmen's Compensation Law* § 48.43 at 8–522, recognizes the validity of the concept of joint employment and states that the "most obvious illustration [of joint employment] is that of a classic joint venture."

This Joint Venture Agreement provides that the plant "will be operated by Tidewater for the benefit of and for the account of the Joint Venturers under and in accordance with the provisions of [the] Plant Operating Agreement between the parties ...". *Joint Venture Agreement* at ¶ VIII. The stated objective of the joint venture was to produce naphthalene product in which each joint venturer was to own and have the right to dispose of an undivided one-half interest. Questions of policy concerning operation of the plant were to be determined by the joint venturers by mutual agreement. *Plant Operating Agreement* at ¶ 4.

Tidewater [Getty] was both joint venturer and operator of the plant. As operator, it had the power to decide questions of management or administration of the plant. However, its actions were subject to the policy determinations of the joint venturers and were subject to the financial limitations and approval of the joint venturers. *Id.* at ¶¶ 4, 5.

The operator was acting "for the account of and at the expense and risk of the Joint Venturers and [was not] liable for any damage to or loss ... of property ... or any injury ... to any person in connection with the operation of said Plant ...", unless caused by act of bad faith or willful misconduct on the part of the operator. *Id.* at ¶ 13.

Plaintiffs contend that this joint venture does not involve the sharing of losses by Getty and Collier. They rest this contention on the provision of the Plant Operating Agreement between Tidewater as joint venturer, Collier as joint venturer and Tidewater as operator, which is incorporated in the Joint Venture Agreement. That provision assured Tidewater as operator a mini-

mum monthly fee of $8,333 for operating the plant. Based upon that provision, plaintiffs contend losses and profits of the joint venture were not shared and, hence, the ruling in *Iocono* should not be followed.

The provision on which plaintiffs rest this contention is the provision of the agreement that Getty as operator is to receive a monthly fee of $8333 or one-twelfth of 3.3% of the gross plant investment, whichever is greater, "which shall reimburse Operator for all indirect costs incurred by it in connection with its activities as Operator hereunder, including, but not limited to costs of general overhead, management, administrative and supervisory employees of Tidewater, whether acting as Operator or otherwise." *Plant Operating Agreement* at ¶ 21.

This provision does not establish that Collier was not required to share in the profits or losses of the joint venture. Earlier in this decision, the Court has noted that the agreements require that all costs and expenses of the joint venture were to be borne equally by the joint venturers. Under the agreements, the monthly fee was to be paid by the joint venturers "[i]n addition to the direct costs". Under the terms of the agreement, the fee was not to provide a profit to Tidewater but to reimburse Tidewater for "indirect costs incurred by it in connection with its activities as Operator hereunder". *Id.* The fee provision does not lessen the obligation of each joint venturer to share in losses or expenses of the joint venture.

Based upon the above considerations, I conclude that the control which Tidewater exercised on behalf of the joint venture is in law the act of the joint venture. The joint venture is not a separate entity, but in reality is the joint action of the venturers. Each of the joint venturers had the requisite control over the employees at the joint venture plant. Accordingly, each joint venturer is a joint employer and as such is entitled to protection under 19 *Del.C.* § 2304. *Cf. Iocono, supra.*

## II

The next issue deals with the fact that the named insured under the worker's compensation insurance covering plaintiffs was carried in the name of Getty. Plaintiffs contend that since the joint venture and/or Collier were not named as insured employers under the policy, they did not comply with 19 *Del.C.* § 2371 and § 2372. Based on this violation, plaintiffs contend that Collier is not entitled to protection under 19 *Del.C.* § 2304.

Collier's reply is two-fold: (1) that by virtue of the joint venture agreement, the Getty coverage satisfies § 2371 and § 2372 on behalf of the joint ventures, and (2) that if the joint venturers failed to meet their obligations under the above sections, the penalty for such failure is that provided in 19 *Del.C.* § 2374 and it does not authorize an employee to bring a tort suit against the employer.

The issue must be resolved according to the relationship of the plaintiffs and defendants to the joint venture. The Court has noted above that under the joint venture agreements, all expenses of maintaining and operating the plant were shared equally between the joint venturers and were advanced to Getty as operator of the plant based on estimated expenses for the next month. Apparently, that was the only source of funds to be expended by the operator, since the product of the joint venture was not sold by the joint venture but instead was sold or used by the joint venturers. Hence, when the operator performed its obligation to maintain insurance and to comply with all laws and regulations, the funds which it paid were those provided by the joint venturers. *Plant Operating Agreement* at ¶ 21. Underlying the operator's actions is the general provision that "Operator [was] acting for the account of and at the expense and risk of the Joint Venturers". *Id.* at ¶ 12.

The Court has concluded in the earlier portion of this decision that because of the special relationship of joint venturers, each joint venturer stands in the position of a partner and the actions of each joint venturer in furtherance of the joint venture are attributable to the other joint venturer. An employee engaged in the activities of

the joint venture is the employee of both joint venturers without distinction. Hence, when one joint venturer uses joint venture money supplied by the joint venturers to procure worker's compensation insurance covering employees engaged in activities of the joint venture, that action is the action of the joint venture and the insurance protection belongs to the joint venturers and, hence, to both joint venturers.

The Court has not been referred to specific provisions of the worker's compensation policy dealing with this employee's protection. Plaintiffs' allegation is that they were involved in work for the joint venture. In fact, that appears to be the basis for plaintiffs' asserting a claim against Collier. It is not contended that plaintiffs were not protected by worker's compensation insurance while working for the joint venture. Nor do the joint venturers or the worker's compensation insurance make such contention. In fact, Collier asserts and plaintiffs do not dispute that plaintiffs did receive worker's compensation related to their asbestos-related disease based on their exposure to asbestos while working for the joint venture. Therefore, the protection required with respect to plaintiffs has been provided.

In view of the conclusions reached above, it is unnecessary to address the right of an employee who has not been covered by worker's compensation protection to bring tort suit against the employer.

### III

Based upon the foregoing considerations, I find that Collier and the joint venture of Collier and Getty are protected from tort suit by employees who did work for the joint venture based on alleged exposure to asbestos in the course of said work. Since it appears that plaintiffs' tort claim against Collier relates to such employment, Collier's motion for summary judgment will be GRANTED upon presentation of appropriate order order or consent or notice.