VAUGHN, Justice,
dissenting:
The Majority, claiming to be bound by a deferential standard of review, has determined that the Superior Court erred by affirming the Unemployment Insurance Appeals Board’s (“UIAB” or the “Board”) judgment. But the Superior Court was obligated to affirm the Board’s judgment so long as it was: (1) supported by substantial evidence; and (2) free from legal error.[41] The record, taken as a whole, clearly shows that the trial court properly adhered to this standard of review and correctly affirmed the Board’s decision.
Our review on appeal is the same as that of the Superior Court.[42] This Court is prohibited from weighing the evidence, determining questions of credibility, or making its own factual findings.[43] The Majority, however, has chosen to disregard this standard of review and replace the UIAB’s factual findings with its own. By usurping the Board’s role as factfinder, the Majority has created a standard providing significantly less deference than our precedent demands.[44] It has also erroneously found *1227 that the UIAB’s conclusion was legally flawed. For these reasons, I respectfully dissent.
I. The “Substantial Evidence” Standard of Review
Our review of an appeal from'the UIAB to the Superior Court is limited to a determination of whether there is substantial evidence in the record to support the UIAB’s findings and whether such findings are free from legal error.[45] Substantial evidence is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.”[46] While substantial evidence is more than a mere scintilla, it is less than a preponderance of the evidence.[47] Like the Superior Court, this Court considers the record in the light most favorable to the party prevailing on the UIAB appeal.[48] We do not “’weigh the evidence, determine questions of credibility, or make [our] own factual findings.’ ”[49] “Questions of law are reviewed denovo.”[50]
II. Analysis
The Superior Court concluded that the UIAB’s determination was supported by substantial evidence and that Murphy & Landon (the “Firm”) failed to meet its burden of proving Pernic was terminated for just cause. Under the standard of review by which both this Court and the Superior Court are bound, I find no error in the trial court’s decision.
The Majority, however, takes issue with the following factual findings made by the Board: (1) Pernic was terminated for the single incident of paying a $3,000 invoice without first acquiring authorization from her supervising attorney; and (2) Pernic never received an unambiguous warning that paying invoices without first receiving authorization would result in her termination. After thoroughly reviewing the record, I believe both of these findings are supported by substantial evidence. Additionally, the Majority concludes that the Board erred as a matter of law when it found that the Firm was. required to provide Pernic with a specific warning that .she -could be fired for violating the Firm’s unwritten financial policy. I believe this conclusion is in direct contradiction to Delaware law.
Pernio’s Failure to Appear Before the UIAB and Contest This Appeal ' is Not Dispositive
At the outset, it is important to note that Pernic’s failure to appear before the UIAB, while unwise, is not dispositive for the purposes of this appeal. The Board was permitted to hear the Firm’s appeal with or without Pernic present and consider the entire record before the Appeals *1228 Referee, which included Pernic’s testimony.[51] Similarly, her ill-advised decision to not partake in the appeals process should not weigh into this Court’s final determination.[52]

The UIAB’s Finding That Pernic Was Fired Solely for Violating the Finn’s Financial Policy is Supported by Substantial Evidence

Turning to the merits of the case, it is clear that the Appeals Referee improperly limited the Firm from presenting evidence of Pernic’s cumulative misconduct. The Board, however, cured this error by allowing the Firm to present additional evidence of the reason or reasons for Pernic’s. discharge.[53] The Majority contends that although the Board heard this additional evidence, it failed to give it sufficient consideration. It bases this assumption on the belief that the evidence presented supported only one reasonable result: Pernic was fired for her cumulative misconduct, which culminated in her paying an invoice without supervisor permission.
I disagree. “[A] Board’s finding of fact is given a high level of deference at both the Superior Court and Supreme Court. Overturning a factual finding of the Board may only be done ‘when there is no satisfactory proof in favor of such a determination.’ ”[54] This Court’s sole responsibility on appeal is limited to determining whether there is substantial evidence supporting the Board’s conclusions.[55] Our duty ends there and does not include weighing evidence or determining what testimony the Board should have credited.[56]
*1229 In Optima Cleaning Systems, Inc. v. Unemployment Ins. Appeal Bd., the Superior Court addressed a UIAB appeal with facts very similar to the case at bar.[57] In Optima, the employer offered evidence that the employee had engaged in cumulative misconduct, which the employer argued was the reason for his termination.[58] The Appeals Referee disagreed and concluded that the employee was terminated solely for what was labeled a “key incident.” [59] The Referee went on to find that the “key incident” was not an act of willful and wanton conduct and thus the employee was not fired for just cause.[60]
On appeal to the UIAB, the Board affirmed the Referee’s decision. In so doing, the Board described the employee’s repeated misconduct leading up to the “key incident” as consisting of “various and wide-ranging issues.”[61] It also observed that the employer could have terminated the employee for these incidents, but chose not to do so.[62] With respect to the “key incident,” the Board agreed that it “was an isolated inadvertence, rather than the product of willful or wanton behavior.” [63]
The employer then appealed to the Superior Court, which affirmed the factual findings of the Board. The court reasoned:
The Board considered [the employee’s] repeated misconduct, concluding that the “numerous reprimands and warnings beginning in October 2005[] deal with various and wide-ranging issues.” As a result, the Board determined that [the employer] did not terminate [the employee] as a result of his extensive track-record. Rather, it found that the key incident prompted [his] termination. Therefore, the Board considered all of the relevant evidence, giving little weight to [the employee’s] repeated misconduct. To the extent that [the employer] challenges the weight that the Board gave to this evidence, such a determination is within the province of the Board. The Court does not weigh evidence, determine questions of credibility or make its own factual findings.[64]
The reasoning set forth in Optima is equally applicable to the facts of this case. Murphy testified that he and Ferguson had a meeting with Pernic at the Firm “a couple months”' before she was fired to warn her that her cumulative misconduct, which included tardiness, a disrespectful and uncooperative attitude, and refusal to perform duties consistent with her job, could ultimately lead to her being fired.[65] Like the employer in Optima, the Firm alleged that it was Pernic’s cumulative misconduct that led to her employment *1230 being terminated. The Board disagreed and determined that it was Pernic’s unauthorized paying of the $3,000 invoice in violation of the Firm’s unwritten financial policy that was the “key incident” and sole reason for her firing.[66] This factual determination was squarely within the purview of the Board and can only be overturned if it is not supported by substantial evidence.
The record shows that the Board’s finding was supported by substantial evidence. Although it is possible that the Firm’s decision to fire Pernic was based on her cumulative misconduct, a reasonable person could also conclude that her discharge stemmed solely from her alleged intentional breach of the Firm’s unwritten financial policy. Based on the Firm’s own employees’ testimony, Pernic was a subpar worker who repeatedly acted rudely to her supervising attorney, took late lunches, failed to appear on time, and refused to perform tasks within the scope of her responsibility. But rather than terminating her employment for these acts, the Firm consistently tolerated Pernic’s misconduct. It was not until Pernic’s direct, and allegedly knowing, breach of the Firm’s financial policy did the Firm decide to terminate her employment.
The UIAB considered these facts and came to a conclusion that is far from inconceivable. Despite the Majority’s assertion, there is no evidence in the record that the UIAB “failed to give any rational consideration to the evidence before it.”[67] The Board allowed the Firm to offer all the evidence it wished to offer and independently considered' it. While it is true that the Firm offered more evidence than Pernic, including the testimony of three other paralegals who worked at the Firm, the UIAB is “free to accept and reject testimony, accept the credibility of witnesses and weigh evidence as it sees fit.”[68] It was thus permitted to believe Pernic’s testimony over the Firm’s other employees.[69] It was also free to determine that Pernic’s termination letter was written with an eye toward the present litigation and accordingly give it little or no weight.
It cannot be said that the Board’s decision was unreasonable merely because this Court would have reached a different conclusion.[70] To hold otherwise contradicts the well-established and extremely deferential standard of review this Court must apply in an appeal from an administrative agency.[71] A “reasonable mind” could determine that the Firm tolerated Pernic’s subpar performance due to her family connections with the firm[72] and prior sat *1231 isfactory work,[73] but would not tolerate an intentional breach of a known company policy. Thus, under the “substantial evidence” standard of review, the’ Superior Court did not err by affirming the UIAB’s finding that Pernic was fired' solely for paying the invoice.

The Conclusion That Pernic Was Not Warned, She Could Be Fired for Paying an Invoice Without Murphy's Approval Is Supported by Substantial Evidence

The Majority also takes issue with the UIAB’s factual finding that Pernic did not receive an unambiguous warning that an invoice paid without approval of the supervising attorney was a violation of Firm policy and would lead to termination. The Majority contends that Pernic did receive adequate warning that her action could lead to her termination. This argument, however, is only applicable by extension of the Majority’s first factual finding, i.e., Pernic was fired due to her cumulative misconduct and not for the single act of paying the invoice. The Majority’s conclusion that Pernic was provided sufficient warning would thus only be correct if a “reasonable mind” could not find that she was fired solely for paying the invoice. As discussed above, the Appellant has failed to satisfy that high burden here.
In the alternative, the Majority contends that even if Pernic was terminated solely for paying the invoice, there is no disconnect between that act and the prior, general warning she received. But, as will be discussed infra, because the Firm fired Pernic solely for paying the invoice, it was required to show that it provided her with an unambiguous warning that paying invoices without authorization could lead to her being -fired. There is no evidence on the record showing that such a warning was. given.
When- Ferguson and Murphy met with Pernic months before her termination, they warned her that her tardiness, disrespectful attitude, long lunches, and refusal to do work for which she was responsible could ultimately lead to her being fired.[74] Neither Murphy nor Ferguson warned Pernic that the unauthorized payment of an invoice could lead to her being fired. In fact, 'the Firm’s financial policy was never even mentioned. Pernic testified as much in front of the Appeals Referee, stating that she received no warning regarding the payment of invoices and was unaware that she could be fired for violating the Firm’s unwritten financial policy.[75]
Moreover, the only evidence the Firm offered to show that Pernic was even aware of the unwritten financial policy was Ferguson’s testimony that she believed “th[e]‘policy was part of [Pernic’s] learning process.”[76] Conversely, Pernic testified that she was unaware of the financial policy, received no formal training, and had paid “hundreds of’ invoices without receiving any type of warning that her conduct was prohibited.[77] She also testified that *1232 Ferguson had directly told her that she could pay the invoices without approval “as long as they were correct.”[78] Although the Firm rebutted this testimony with evidence of its own, the UIAB, acting within its role as factfinder, chose to believe Pernic. The evidence presented was sufficient for a “reasonable mind” to determine that Pernic was not warned she could be fired for paying unauthorized invoices and was unaware of the unwritten financial policy’s existence.
The Majority avoids reaching this conclusion by again improperly making its own factual finding. Specifically, the Majority accepts as true Murphy’s testimony that Pernic went into his office and took the invoice out of his mailbox without his permission to pay it.[79] The Majority concludes that this act falls within the general warning that Murphy gave Pernic to cease all disrespectful behavior. Pernic, however, testified that she received the invoice directly and did not take it out of Murphy’s mail.[80] The Board considered this conflicting evidence and found that Pernic was fired because she breached the financial policy by paying the invoice. The Board did not find that Pernic stole the invoice out of Murphy’s inbox or that she knowingly acted in violation of company policy. It was the duty of the Board to determine whose testimony was credible and reach a reasonable conclusion based on that testimony. Because the Board satisfied that standard here, I find no error in the Superior Court’s affirmance.

The UIAB Did Not Err as a Matter of Law by Determining That the Firm Was Required to Warn Pernic of the Consequences of Violating the Firm’s Unwritten Financial Policy

Finally, the Majority contends that the Board erred as a matter of law when it determined that the Firm was required to inform Pernic what the “trigger” for her discharge would be “in terms of timing, conduct, or failure to improve.”[81] As the Majority holds, “An employer need not specify the types of conduct that could lead to termination so long as the employee is aware that certain types of conduct are improper and prohibited.”[82] Moreover, the “[violation of an established employer policy may constitute just cause to terminate an employee ... [only if the employee is] aware that the policy exists and that a violation of the policy may result in termination.” [83]
*1233 The Majority, again making its own factual finding, has determined that Pernic had knowledge of the unwritten policy and thus received adequate warning. The Board, however, made no such finding.[84] As discussed above, Pernic testified that she was unaware of the Firm’s unwritten policy and never received a warning regarding the unauthorized payment of invoices. The Firm was required to show that Pernic had knowledge of the unwritten financial policy to justify her termination,[85] and it was within the purview of the Board to accept or reject the Firm’s testimony. Because the Board’s factual findings were supported by substantial evidence, it cannot be said that its legal conclusion was erroneous.[86]
III. Conclusion
The UIAB considered all of the evidence regarding Pernic’s misconduct, the counseling she received for her deficient performance, and the actual cause of her termination. After reviewing the conflicting evidence, the Board chose to accept Pernic’s testimony as credible. Such was the Board’s right as factfinder. The Majority has rejected the Board’s findings not because there is “no satisfactory proof in [their] favor,” but merely because it disagrees with them.[87] I adhere to the deferential standard of review that governs administrative agency appeals and find that the Board’s judgment was supported by substantial evidence and free from legal error. Accordingly, I dissent.

. Tulou v. Raytheon Serv. Co., 659 A.2d 796, 802 (Del.Super.1995).

. Whitney v. Bearing Const., Inc., 2014 WL 2526484, at * 2 (Del. May 30, 2014) (“Board decisions are reviewed using the same standard at both the Superior Court and the Supreme Court. We review legal issues decided by the Board de novo and 'factual findings to determine whether they are supported by substantial evidence.’") (quoting Scheers v. Indep. Newspapers, 832 A.2d 1244, 1246 (Del.2003)).

. Thompson v. Christiana Care Health Sys., 25 A.3d 778, 782 (Del.2011).

. Evans v. Tansley, 1988 WL 32033, at *2 (Del. Mar. 29, 1988) (“The law in Delaware is *1227 clear regarding appeals from the UIAB to Superior Court. The credibility of witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the UIAB to determine. The Superior Court is only to determine whether there is satisfactory proof to support a factual finding.”) (citations omitted); Scheers, 832 A.2d at 1246-47 ("This Court, replicating the role of the Superior Court, reviews de. novo legal issues decided by the Board, and reviews factual findings to determine whether they are supported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support .a conclusion.”) (citations omitted).

. Thompson, 25 A.3d at 781-82.

. Oceanport Indus., Inc. v. Wilmington Stevedores, Inc., 636 A.2d 892, 899 (Del.1994).

. Falconi v. Coombs & Coombs, Inc., 902 A.2d 1094, 1098 (Del.2006).

. Thompson, 25 A.3d at 782.

. Id. (quoting Falconi, 902 A.2d at 1098).

. Camtech Sch. of Nursing & Technological Scis. v. Del. Bd. of Nursing, 2014 WL 4179199, at *1 (Del. Aug. 22, 2014).

. See 19 Del. Admin. C. § 1201-4.2 ("Presence of parties required. All parties to the appeal shall be present at the Board's hearing. Failure to appear within 10 minutes of the time indicated on the Notice may result in the Board hearing the appeal in absence of the delinquent party or, if the delinquent party is the appellant, dismissal of the appeal.”). In the last paragraph of its opinion, the Majority instructs the Board to enter a judgment in favor of the Firm if Pernic does not appear at a new hearing. This instruction is clear error. See id. The presence of the Appellee at the hearing before the Board is not legally relevant. If an appellee fails to appear at a hearing before the Board, the Board may proceed to hear the appeal in the appellee’s absence. There is no precedent for dismissal of the employee’s petition for benefits if the employee is the appellee simply because the employee failed to appear.

. See Moore v. Owens, 2009 WL 3298139, *1 (Del. Oct. 14, 2009) (affirming the trial court’s decision despite the Appellee's failure to file an answering brief on appeal); see also Sullivan v. Mayor of Elsmere, 23 A.3d 128, 132 (Del.2011) ("[We review administrative agency decisions] to determine whether [the Board] acted within its statutory authority, whether it properly interpreted and applied the applicable law, whether it conducted a fair hearing and whether its decision is based on sufficient substantial evidence and is not arbitrary.”) (citations and quotations omitted).

. See Bilski v. Bd. of Med. Licensure & Discipline, 2014 WL 3032703, at *7 (Del.Super. June 30, 2014) (finding that the Hearing Officer’s improper reliance on nonbinding guidelines and the officer’s subsequent flawed factual findings were cured by the Board’s deliberations on the record), aff'd, 2015 WL 2452821 (Del. May 20, 2015).

. Whitney v. Bearing Constr., Inc., 2014 WL 2526484, at *2 (Del. May 30, 2014) (quoting Wyatt v. Rescare Home Care, 81 A.3d 1253, 1259 (Del.2013)); Steppi v. Conti Elec., Inc., 2010 WL 718012, at *2 (Del.2010) ("Only when there is no satisfactory proof in favor of a factual finding of the Board may the Superior Court, or this Court for that matter, overturn it.”) (quoting Johnson v. Chrysler Corp., 213 A.2d 64, 67 (Del.1965)).

. Johnson, 213 A.2d at 66 ("Although our Courts have expressed it in various ways, we think the sole function of the Superior Court, as is the function of this Court on appeal, is to determine whether or not there was substantial competent evidence to support the finding of the Board, and, if it finds such in the record, to affirm the findings of the Board.”).

. See Williams v. Auto Zone, 2013 WL 6662859, at *4 (Del.Super. Dec. 16, 2013) *1229 ("[T]he Court must show deference toward the Board’s fact-finding and its application of those facts to the appropriate legal standards.”).

. Optima Cleaning Sys., Inc. v. UIAB, 2010 WL 5307981 (Del.Super. Dec. 7, 2010).

. Id. at *1-2.

. Id. at *2.

. Id. at *2.

. Optima Cleaning Sys. Inc., 2010 WL 5307981 at *3.

. Id. at *2.

. Id.

. Id. at *3.

. Murphy testified that he and Ferguson had a private meeting with Pernic at which they went over “her chronic lateness, her taking too much time for lunch, her uncooperative attitude, her refusal to work overtime.... And we told her clearly and unequivocally that this is part of your job responsibilities.” Appellant's Op. Br. App. at A123.

. Pernic paid the invoice on April 12, 2012, exactly one month before she was fired.

. Majority Opinion at 1217-18.

. Finestrauss v. Phillips, 2002 WL 382858, at *3 (Del.Super. Mar. 8, 2002) (citing Evans v. Tansley, 540 A.2d 1088 (Del.1988)).

. Johnson, 213 A.2d at 67 ("Admittedly, the record in this [case] is full of contradictions ... but this is not to say that the claimant's case is thereby completely to be disbelieved.”).

. Finestrauss, 2002 WL 382858, at *2 ("[The reviewing court] will give deference to the expertise of administrative agencies and must affirm the decision of an agency even if the court might have, in the first instance, reached an opposite conclusion.”).

. Johnson, 213 A.2d at 67 (finding that the Superior Court judge erred by usurping the Board's role as fact-finder and weighing the evidence, determining the question of credibility of witnesses he had not heard, and reversing the award in the face of evidence which, if accepted, would have supported the employee’s claim).

. Pernic was Ferguson’s niece. Murphy testified that he chose not to fire Pernic for her cumulative misconduct for two reasons, the first being that it would cause "repercussions with [her] family.” Murphy went on to state: "I was ... concerned as to the repercussions for Ms. Ferguson. I will tell you the repercussions for Ms. Ferguson having had to, as [Pernic's] supervisor, participate in her firing has been terrible on the personal side for her." Appellant’s Op. Br. App. at A121-22.

. Murphy testified that the second reason he chose not to fire Pernic for her cumulative misconduct was that “[she was not] always a terrible employee” and when she first started with the Firm she "showed a lot of motivation and ... effort.” Appellant’s Op. Br. App. at A122.

. Murphy testified his meeting with Pernic lasted over an hour, they discussed her cumulative misconduct, and that he and Ferguson told Pernic that “you can lose your job if you don’t straighten yourself out.” Appellant's Op. Br. App. at A123.

. The firm did not document the existence of the meeting with Pernic and failed to make any record of what was discussed.

. Appellant’s Op. Br. App. at A56.

. Appellant’s Op. Br. App. at A66. In her testimony before the Appeals Referee Pernic stated: “If I had done it hundreds of times throughout the two years that I worked there, then I would expect that somebody would have caught onto it and that I would have gotten a warning, a verbal warning, a written *1232 warning, something, but I wasn’t.” Pernic also stated: "The invoices would come in and I would pay them because that's what I was told to do by all the other people I worked with.” Appellant’s Op. Br. App. at A65, A67.

. Appellant’s Op. Br. App. at A66.

. In Mazzetti & Sons, Inc. v. Ruffin, the employee appealed a Superior Court decision reversing an Industrial Accident Board decision that awarded him worker’s compensation. The employee alleged that the Superior Court "improperly acted as a fact finder and then substituted its own findings of fact for those of the Board.” On appeal, this Court agreed, discussed the deferential standard of review that is "substantial evidence,” and reversed the trial court’s decision. 437 A.2d 1120, 1121-22, 1124-27 (Del.1981).

. Pernic testified: "This invoice was not in his inbox.... Because I never put invoices in his inbox because they would get lost, and then they would be gone, and then we wouldn't pay them, and then we would get a late fee.... ” Appellant’s Op. Br. App. at A68-69.

. Majority Opinion at 1224-25.

. Id. (emphasis added) (citations omitted).

. Optima Cleaning Sys. Inc, 2010 WL 5307981 at *3; see also McCoy v. Occidental Chem. Corp., 1996 WL 111126, at *3 (Del.Super. Feb. 7, 1996) ("Violation of a reasonable company rule may constitute just cause for discharge, but the employee must be aware that the policy exists and may be cause for discharge.”).

. In its decision, the Board stated: “Where the company policy has been clearly communicated to the employee, the employer has given adequate notice to justify termination.” The Board went on to find that the payment of a single invoice, without approval, in violation of an "unwritten policy” is clearly insufficient evidence of willful and wanton conduct. Appellant’s Op. Br. App. at A130.

. See Smoot v. Comcast Cablevision, 2004 WL 2914287, at *4 (Del.Super. Nov. 16, 2004) (“An employee’s violation of a company policy of which that employee is aware may create just cause for termination of employment.”) (citing Fader v. Burris Foods., 1997 WL 366889, at *2 (Del.Super. May 14, 1997)).

. Admittedly, the Board's opinion should have provided more clarity regarding what rule of law it was relying on to affirm the Appeals Referee’s decision. Nevertheless, the Board reached the correct legal conclusion and its decision should be affirmed on appeal.

. See Steppi, 2010 WL 718012, at *2 (quoting Johnson, 213 A.2d at 66).