[No. 40865.    En Banc.    June 4, 1970.]

BETTY L. MUSSON, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[*]

*The Attorney General* and *James M. Beecher, Assistant,* for appellant.

*Robert Baronsky* (of *Beresford & Booth*), for respondent.

McGOVERN, J.—This is an appeal from a judgment of the superior court reversing an order of the Board of Industrial Insurance Appeals. The trial court remanded the cause to

[*]Reported in 470 P.2d 183.

the Department of Labor and Industries directing it to allow the benefits of the Industrial Insurance Act to the widow of Ronald J. Musson, a public relations director who also served as an unlimited hydroplane driver.

Bardahl *Chemical* Corporation was organized for the sole purpose of owning and operating the unlimited hydroplane, *Miss Bardahl*. In 1961 it employed Mr. Musson to drive the boat. One year later he was employed as a public relations director by the Bardahl *International* Corporation, a distributing company whose principal product is a motor oil additive. Mr. Ole Bardahl is the controlling shareholder of both the chemical corporation and the distributing company.

June 19, 1966, Mr. Musson was killed when he was thrown from the *Miss Bardahl* while racing it on the Potomac River in Washington, D.C. He was then one of a number of Bardahl International employees insured under the state industrial insurance classification, RCW 51.20.490 (Class 49-4), which reads:

> Office employees of employers whose business is subject to the compulsory provisions of the Act and whose place of employment is situated in the yard, plant, or on the premises where the employer is conducting extrahazardous operations.

He had not been reported to the State Department of Labor and Industries as an employee of the Bardahl Chemical Corporation, the owner of *Miss Bardahl*.

Following the death of her husband, Mrs. Musson applied for industrial insurance benefits payable to survivors of workmen killed in covered employment. Her petition was denied by the Supervisor of Industrial Insurance and the Board of Industrial Insurance Appeals sustained that denial. On appeal, the superior court reversed the order of the board and this appeal followed.

Appellant's assignments of error are six in number but each claimed error relates to a single issue, *i.e.*, when Ronald Musson was driving the hydroplane, owned and operated by Bardahl *Chemical* Corporation, was he covered by the Industrial Insurance Act because of his employment

with the Bardahl *International* Corporation? We find that he was.

The argument is advanced by the appellant that Bardahl Chemical Corporation and Bardahl International Corporation are admittedly separate and distinct corporations. It is urged that Mr. Musson's employment responsibilities for each of those corporations were clearly distinguishable and that, therefore, Mr. Musson's widow is not entitled to survivor's benefits unless it is by virtue of her husband's employment with Bardahl Chemical Corporation, whose boat he was driving at the time of his death.

A series of cases involving duality of employment by an injured workman seeking industrial insurance benefits have been decided by this court in recent years. With but one exception, the facts in each case where such that the court was able to isolate the injured workman's particular services at the time of the injury into one of his distinct employments. In *Berry v. Department of Labor & Indus.*, 11 Wn.2d 154, 118 P.2d 785, 140 A.L.R. 392 (1941) the workman was injured as a result of an accident which occurred while he was hauling wheat for his farmer employer and for five neighboring farmers. It was said that the truck operation was a part of his employer's agricultural business and that, therefore, the injured employee was not covered by the Industrial Insurance Act. We held otherwise and said that "[a]n employer may, at one and the same time, be engaged in two distinct employments, one of which is extrahazardous and within the scope of the statute, while the other is not." We found that the employer farmer was also engaged in a trucking operation and that the employee was covered under the act because he was injured while working within that occupation.

In *Hill v. Department of Labor & Indus.*, 174 Wash. 571, 25 P.2d 568 (1933) the injured workman's employer provided industrial insurance coverage for the employee under "Class 8-3 Irrigation ditches (maintenance)." The injured employee's duties, however, included bookkeeping and other financial services for the employer as well as irrigation ditch maintenance activities. Industrial Insurance Act

benefits were denied the widow of the employee who was killed while on a trip for his employer because the trip was not concerned with the physical maintenance of the employer's irrigation ditches. *See Sheldon v. Department of Labor & Indus.*, 168 Wash. 571, 12 P.2d 751 (1932); *Denny v. Department of Labor & Indus.*, 172 Wash. 631, 21 P.2d 275 (1933); *Maeda v. Department of Labor & Indus.*, 192 Wash. 87, 72 P.2d 1034 (1937).

In *Wineberg v. Department of Labor & Indus.*, 57 Wn.2d 779, 359 P.2d 1046 (1961) the claimant was employed as a maintenance man on a dairy farm and in a commercial creamery operated by the same employer. He was injured while replacing a light bulb in the barn. If the injury had occurred in the course of his commercial creamery employment, he would have been entitled to industrial insurance benefits. But, because the injury occurred while he was performing dairy farm services, an activity excluded under the terms of the Industrial Insurance Act, the benefits of the act were denied to the claimant.

In *Clossin v. Department of Labor & Indus.*, 64 Wn.2d 783, 394 P.2d 363 (1964) the claimant's husband was killed while driving a delivery truck for a retail florist shop which had an attached nursery where most of the employer's products were grown. Because the delivery service associated directly with the agricultural act of growing flowers was not an activity falling within the terms of covered employment, we were required to consider the question of multiple employment. In affirming the judgment for the claimant we said that "[t]he retailing part of the business is clearly a separate and distinct occupation from that of growing the plants. . . . The two distinct aspects or occupations must be considered separately in determining the application of the Industrial Insurance Act."

In each of the foregoing cases the court was able to clearly determine which employment was being served at the time of the injury. But, in *Morris v. Department of Labor & Indus.*, 179 Wash. 423, 38 P.2d 395 (1934) no such categorical line of demarcation in employment was possible and a different result attained. There the claimant was a

serviceman for a power company during his regular working hours and that employment was an extrahazardous activity. He was injured one evening while enroute home after having first finished his daily routine service calls and after soliciting business for his company. The business solicitation activity was also part of his employment duties but was not an extrahazardous activity. The question before the court was whether the business activity during which the injury occurred was sufficiently related to the extrahazardous activity so as to entitle the claimant to benefits under the act. We said in *Morris,* 179 Wash. at 430:

> Where the occupation is listed as an extrahazardous one and the particular activity in which the employee is immediately engaged, though in itself not extrahazardous within the meaning of the act, is nevertheless incidental to, intimately connected with and essentially a part of the occupation classified as extrahazardous, the employee, if injured in the course of his employment, is covered by the act. On the other hand, where the employee is engaged in two or more activities in connection with work classified as extrahazardous, but the two activities are separate and distinct from each other, with a clear line of demarcation existing between them, and the particular activity in which the employee is engaged at the time of his injury is not of itself extrahazardous within the meaning of the act, then the employee, though acting in the course of his employment, is not covered by the act, despite the fact that his other activity is within the act.
>
> This case falls within the class of the first definition . . . because the activity in which the employee was engaged at the time of his injury was inseparably intermingled and interwoven with, and essentially a part of, the *operation* of an electric plant or electric system. The entire operation being classified as extrahazardous and the particular activity being incidental thereto and an essential part thereof, appellant is entitled to the benefits of the act.

Like the learned trial court, we find the reasoning in *Morris* to be applicable to the facts at hand. The trial court in the instant case found that:

(1) a very substantial portion of the decedent's working

time during each year, from the date of his employment by Bardahl International Corporation, was spent in activities involving the hydroplane. (2) The decedent was paid by Bardahl International Corporation a monthly salary of $1,250.00 twelve months of each year. (3) The decedent's trip and travel expenses when racing the hydroplane and in particular, during his last trip to Washington, D. C., were paid by Bardahl International Corporation and (4) the decedent was hired and maintained by Bardahl International Corporation as "Public Relations Director" substantially because of his past and continuing reputation as a hydroplane driver, this factor being very important to his work in sales promotion and public relations for Bardahl International Corporation. (5) The decedent's racing activities were inseparably intermingled and interwoven with, and essentially a part of, his duties in public relations work within Bardahl International Corporation's sales program.

Those findings are supported by substantial evidence.

Additionally, Mr. Musson was sent to Washington, D.C. by Bardahl International Corporation when it knew that he would be driving the *Miss Bardahl* while there, and the advertising program and the sales promotion efforts of Bardahl International Corporation were particularly directed toward the racing activities of the boat.

The trial court was correct in holding that Mrs. Musson is entitled to widow's benefits under the Industrial Insurance Act because her deceased husband's boat racing activity was inseparably intermingled and interwoven with and essentially a part of his duties with the Bardahl International Corporation, for which work that corporation mandatorily paid premiums to the Department of Labor and Industries. The attempt to subdivide Mr. Musson's working day of June 19, 1966, into segments belonging to one employer or the other by fine-line distinctions would be both unrealistic and contrary to law.

We affirm.

HUNTER, C. J., FINLEY, ROSELLINI, HAMILTON, HALE, NEILL, and STAFFORD, JJ., concur.

August 3, 1970. Petition for rehearing denied.