20 P.3d 939 (2001)
143 Wash.2d 422
Richard O. OCHOA, Petitioner,
v.
DEPARTMENT OF LABOR AND INDUSTRIES, State of Washington, Respondent.
No. 69916-0.
Supreme Court of Washington, En Banc.
Argued February 27, 2001.
Decided April 12, 2001.
*940 Delay, Curran, Thompson, Pontarolo & Walker, Michael John Walker, Michael J. Pontarolo, Spokane, for Petitioner.
Christine Gregoire, Attorney General, Anastasia R. Sandstrom and John P. Wasberg, Assistant Attorneys General, Seattle, for Respondent.
JOHNSON, J.
The issue in this case is whether a licensed jockey who was hired to exercise a horse during a race meet is entitled to workers' compensation benefits under RCW 51.12.010 if injured while exercising that horse. The Court of Appeals concluded the rider, as a licensed jockey, was exempt from coverage under RCW 51.12.020(7). We reverse, holding it is a person's employment function at the time of the injury, and not the person's licensed status, that controls whether he or she is excepted from workers' compensation coverage.

FACTS
Richard Ochoa (Ochoa), petitioner, was a licensed jockey who was injured while exercising a horse during the 1993 race meet at Playfair Race Course (Playfair) in Spokane. The 1993 Playfair race meet spanned several months, from July to November. On September 26, 1993, Steven Quionez (Quionez) hired Ochoa to exercise his horse that day. Quionez agreed to pay Ochoa a flat fee for the time he spent exercising the horse. Ochoa was hopeful Quionez would eventually ask him to ride the horse in a race. At the time Ochoa was hired, however, Quionez had not yet decided who would ride the horse in its next race, and the horse was not even scheduled for its next race.
At about 9:00 a.m. that day, Ochoa began running the horse through its morning exercises, including some work at the starting gate where the horse was having problems. While in or near the starting gate, the horse panicked and flipped, pinning Ochoa against the gate. Ochoa's right leg was crushed. Since the accident, Ochoa has not returned to work as a jockey or as an exercise rider.
After the accident, Ochoa filed a claim for workers' compensation with the Department *941 of Labor and Industries (Department). The Department responded in a series of contradictory decisions resulting in a convoluted and protracted procedural path. After initially denying Ochoa's claim, the Department reversed and agreed to cover Ochoa, issuing an order to that effect on July 22, 1994. Pursuant to the order, the Department paid Ochoa $11,550.64 in workers' compensation benefits. The Department mistakenly charged Playfair instead of Quionez, who was Ochoa's actual employer. Playfair protested. The Department agreed Playfair was not obligated in this case. Instead of charging Quionez, however, the Department reversed itself again, finding Ochoa had been granted benefits improperly. Ochoa protested. After reversing itself two more times throughout the spring of 1996, the Department finally concluded Ochoa was not entitled to workers' compensation benefits and demanded repayment of the $11,550.64.
Ochoa appealed the Department's order. An industrial insurance appeals judge reversed the Department, concluding Ochoa was an exercise rider at the time he was injured and was, therefore, entitled to benefits. The Department then filed a petition for review with the Board of Industrial Insurance Appeals (BIIA). In a split decision, the BIIA reversed in favor of the Department, finding Ochoa was not covered because he was a jockey.
Ochoa appealed the BIIA decision to the superior court, which affirmed. He then appealed to the Court of Appeals, which also affirmed. Ochoa v. Dep't of Labor & Indus., 100 Wash.App. 878, 999 P.2d 633 (2000). Ochoa petitioned this court for review, which we granted.

ANALYSIS
The right to workers' compensation is statutory. Harrington v. Dep't of Labor & Indus., 9 Wash.2d 1, 5, 113 P.2d 518 (1941). This right is extended to all employment, except those excluded under RCW 51.12.020. The Industrial Insurance Act (Act), Title 51 RCW, shall be "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. All doubts as to the meaning of the Act are resolved in favor of the injured employee. Clauson v. Dep't of Labor & Indus., 130 Wash.2d 580, 584, 925 P.2d 624 (1996).
There are 13 exceptions to the otherwise universal coverage of the Act. RCW 51.12.020. One of the groups excluded from coverage is "[j]ockeys while participating in or preparing horses for race meets." RCW 51.12.020(7). This exception does not exclude exercise riders from coverage. Ochoa argues he was working as an exercise rider, not as a jockey, when he was injured; therefore, he is entitled to benefits. The Department, on the other hand, contends Ochoa was a licensed jockey who was preparing a horse for a race meet; therefore, under RCW 51.12.020(7), he is not entitled to benefits. Based on the facts of this case and the circumstances of Ochoa's employment, we cannot agree with the Department.
Ochoa asks us to look to the analytical framework in previous BIIA decisions when deciding whether he is an exercise rider or a jockey. While decisions of the BIIA are not binding on this court, we accord substantial weight to the agency's interpretation of regulations falling within its area of expertise. Postema v. Pollution Control Hearings Bd., 142 Wash.2d 68, 86, 77, 11 P.3d 726 (2000). In 1985, the BIIA had occasion to review the issue involved in this case. The distinction between jockeys and exercise riders for purposes of workers' compensation coverage was discussed extensively in In re John B. Heath, Board of Indus. Ins. Appeals No. J-405488 (1985), and In re Rick L. Obrist, Board of Indus. Ins. Appeals No. J-427080 (1985). The facts of those cases were almost identical to those here. In Heath and Obrist, the injured persons were licensed jockeys, but they were injured while running horses through training regimens. The BIIA recognized licensed jockeys often engage in different types of employment depending on whether they are preparing a horse to ride in a race (the function of a jockey) or whether they are running a horse through a required regimen to keep the horse in racing condition (the function of an exercise rider). The BIIA acknowledged exercise riders and *942 jockeys share many common duties, but it drew a distinction by looking to the standard employment practices in the horse industry. Drawing this distinction, the BIIA explained:
Both have the responsibility of exercising and training a horse for racing. Up to two days before a race meet the exercise boy's responsibility is to provide a daily exercise regimen by galloping the horse. The horse is then "breezed" for the last two days. Normally the jockey only prepares the horse an hour before the race meet.
Heath, slip op. at 2; Obrist, slip op. at 3. The BIIA concluded even if a rider was a licensed jockey, if he or she was being paid separately to exercise a horse as part of its training regimen then the rider was an exercise rider for purpose of collecting workers' compensation. Although we did not review Heath and Obrist, we must decide whether the principles recognized in those cases are sound and relevant here.
The Department asks us to ignore the holdings of Heath and Obrist and focus instead on Ochoa's licensing status rather than on the actual conditions of his employment. The Court of Appeals agreed with the Department that the approach in Heath and Obrist had been eroded through subsequent regulatory changes. We disagree for several reasons. First, this reading of Heath and Obrist as dependent on certain regulatory language is inaccurate. Second, even if this reading were correct, the subsequent changes in the risk classification regulations are not so significant as to nullify the principles in Heath and Obrist. Finally, the Department's position in this case conflicts with our previous holdings.
The Department's argument that the principles in Heath and Obrist no longer provide a viable analytical framework reflects a misreading of those decisions. The Department asserts the BIIA decisions in Heath and Obrist were dependent on the regulatory language found in the risk classification categories of WAC 296-17-739 (classification 6708-01) and former WAC 296-17-731.[1] Because these regulations have since been amended or repealed and recodified, the Department concludes Heath and Obrist no longer control. However, a close reading of the decisions reveals the BIIA holding was not predicated upon the regulatory language in effect at the time. Instead, the dispositive issue in Heath and Obrist was that the riders were functioning as exercise riders, not jockeys, at the time of their accidents. Heath, slip op. at 3; Obrist, slip op. at 3-4. The BIIA cited the regulations as additional support of its conclusion that jockeys and exercise riders are recognized as two distinct occupations. Jockeys and exercise riders are still recognized as two distinct occupations under the current regulations, so the fact Obrist and Heath were decided under former versions of the regulations does not change anything.
Even if we were to accept the Department's argument that Heath and Obrist turned on the different classifications found in the regulations, the subsequent regulatory changes are not so substantial as to undermine the analytical framework applied in Heath and Obrist. In 1989, former WAC 296-17-731 was repealed[2] and recodified at WAC 296-17-73105 (1989), which provides in relevant part:
[J]ockeys will be considered exercise riders when employed by a trainer and/or owner at a time other than during the dates of a scheduled race meet. A meet, as used in this section, shall be for the duration of the racing season as set for each track by the Washington state horse racing commission.
WAC 296-17-73105 (1989). The Department reads WAC 296-17-73105 (1989) to say licensed jockeys can never be exercise riders during a race meet; they can only be exercise riders during the off season. Such a reading would render Heath and Obrist obsolete. However, the Department reads too much into this regulation. To read the regulation as the Department suggests, we would *943 have to judicially insert the limiting term "only" into the regulation, which would change the entire construction. We decline to do so.
Not only does the Department's position in this case call for a strained reading of previous BIIA decisions and the Department's own regulations, it also conflicts with this court's previous rulings regarding workers' compensation. In its attempt to minimize Heath and Obrist, the Department suggests that for purposes of workers' compensation a licensed jockey cannot function both as an exercise rider and as a jockey during a race meet. Yet, we have consistently recognized employees often wear different hats throughout the course of their employment and their coverage under RCW 51.12.010 is often dependent on which hat they are wearing at the time of the accident. In Musson v. Department of Labor & Industries, 78 Wash.2d 178, 180, 470 P.2d 183 (1970), this court stated:
A series of cases involving duality of employment by an injured workman seeking industrial insurance benefits have been decided by this court in recent years. With but one exception, the facts in each case were such that the court was able to isolate the injured workman's particular services at the time of the injury into one of his distinct employments.
We went on to review several cases in which distinctions were drawn between excluded and covered occupations.[3] Such an approach was taken in Heath and Obrist and is consistent with the Act's mandate for liberal construction. It also makes sense that a worker can be hired to perform different tasks and the focus of determining coverage under the Act is on the particular task.
We agree with the approach taken by the BIIA in Heath and Obrist. When determining whether a licensed jockey who is injured while exercising a horse is entitled to workers' compensation benefits, the Department must look to the rider's work status and the employment practices in the horse industry. Critical to this inquiry is the relationship between employer and employee. More simply stated, the inquiry is on what task the employee is actually undertaking at the time of the injury.
We then must decide whether, under the specific facts of this case, Ochoa was an exercise rider. On the morning of September 26, 1993, Quionez entered into a verbal agreement with Ochoa to exercise his horse for a flat fee. Ochoa was paid separately rather than from the winning purse. While the horse had raced before, it was not scheduled for another race at the time of the accident. At the time of the accident, Quionez was undecided as to who would ride the horse in future races. The accident took place at 9:20 a.m. that morning, several hours before any races were even scheduled. These facts demonstrate Ochoa, regardless of his licensed status, was employed as an exercise rider at the time of his accident.
We reverse the Court of Appeals, finding Ochoa was an exercise rider at the time of his accident and, therefore, is entitled to benefits under RCW 51.12.010. We further hold Ochoa is entitled to reasonable attorney fees pursuant to RCW 51.52.130.[4]
ALEXANDER, C.J., SMITH, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
NOTES
[1] Under WAC 296-17-739, jockeys can elect coverage at a premium that reflects a high degree of risk in the job, whereas former WAC 296-17-731 set out the premiums employers were required to pay for exercise riders.
[2] Repealed by St. Reg. XX-XX-XXX (Aug. 20, 1989).
[3] See Clossin v. Dep't of Labor & Indus., 64 Wash.2d 783, 394 P.2d 363 (1964); Wineberg v. Dep't of Labor & Indus., 57 Wash.2d 779, 359 P.2d 1046 (1961); Berry v. Dep't of Labor & Indus., 11 Wash.2d 154, 118 P.2d 785 (1941); Hill v. Dep't of Labor & Indus., 174 Wash. 571, 25 P.2d 568 (1933).
[4] RCW 51.52.130 provides: "If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court."